1 | SOMMERS LAW GROUP
STEPHEN A. SOMMERS, SBN 225742
2 | JACOB W. SIDER, SBN 236084
870 Market Street, Ste. 1142
3 | San Francisco, CA 94102
(415) 839-8569 (Tel)
4 | (415) 956-0878 (Fax)
info@sommerslaw.com
5 |
6 | Attorneys for Plaintiff
BLUE MARLIN, CORP.

**FILED**

AUG 1 — 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

7

UNITED STATES DISTRICT COURT

8

FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10 | BLUE MARLIN CORP., a California
Corporation
11 |              Plaintiff,
              vs.
12 |
13 | EJAZ DYEING & FINISHING MILLS (PVT)
LTD., a business organization, form unknown;
14 | and Does 1 through 25 inclusive
15 |              Defendants.
16
17
18
19
20
21
22

) Case No.: C-07-3994 EDL
)
)
) PLAINTIFF'S FIRST AMENDED
) COMPLAINT FOR DAMAGES FOR:
)
)  (1) NEGLIGENT INTERFERENCE
)      WITH PROSPECTIVE ECONOMIC
)      ADVANTAGE
)
)  (2) INTENTIONAL INTERFERENCE
)      WITH PROSPECTIVE ECONOMIC
)      ADVANTAGE
)
)  (3) NEGLIGENT
)      MISREPRESENTATION
)
)  (4) INTENTIONAL
)      MISREPRESENTATION
)
)  (5) BREACH OF CONTRACT, and
)
)  (6) UNFAIR BUSINESS PRACTICES
)
)  **DEMAND FOR A JURY TRIAL**
)

23

24

25

Plaintiff Blue Marlin Corp. (hereinafter, "BLUE MARLIN" or "PLAINTIFF") brings this

suit against Defendant Ejaz Dyeing & Finishing Mills (Pvt) Ltd. ("EJAZ"), and Does 1 through

25 (hereinafter collectively referred to as "DEFENDANTS") for (1) negligent interference with

SOMMERS.LAW.GROUP
SAN FRANCISCO, CALIFORNIA

1  prospective economic advantage, (2) intentional interference with prospective economic

2  advantage, (3) negligent misrepresentation, (4) intentional misrepresentation, (5) breach of

3  contract, and (6) unfair business practices.

4  Plaintiff alleges:

5  ## I.    JURISDICTION

6  1.    This Court is the proper Court.

7  2.    This Court has diversity jurisdiction pursuant to 28 USC 1332, as the Plaintiff is a citizen

8  of California and all DEFENDANTS are citizens of the Country of Pakistan.

9  3.    This Court has personal jurisdiction over EJAZ, as EJAZ has filed suit in California

10  Superior Court in the County of Los Angeles. Further, EJAZ has minimum contacts with the

11  State by doing business with PLAINTIFF in California, taking orders from California, and

12  shipping product to California.

13  4.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because DEFENDANTS

14  reside in this judicial district and/or a substantial part of the events giving rise to the cause of

15  action occurred in this judicial district.

16  ## II.    PARTIES

17  3.    At all material times hereto, Plaintiff BLUE MARLIN has been a California

18  corporation doing business as an apparel wholesaler with its principal place of business located

19  in San Francisco, California.

20  4.    EJAZ is an apparel manufacturer located in Pakistan. EJAZ entered into contract

21  with BLUE MARLIN to manufacture apparel for BLUE MARLIN.

22  5.    The true names or capacities, whether individual, corporate, associate or

23  otherwise, of defendant DOES 1 to 25, inclusive, are unknown to PLAINTIFF, who therefore

24  sues said defendants by such fictitious names. PLAINTIFF is informed and believes and thereon

25  alleges that each of defendants designated herein as DOE is legally responsible in some manner

SOMMERS LAW GROUP
SAN FRANCISCO, CALIFORNIA

(as the agent, partner and/or employee of DEFENDANT) for the events and happenings herein referred to and in doing the actions mentioned below was acting individually as an agent of DEFENDANTS and with the permission and consent of the co-defendants. All actions of each defendant herein alleged were ratified and approved by the other individual defendants and by the officers and managing agents of each other corporate defendant and partnership.

6. All of the DEFENDANTS were aliases for and/or acting as agents, servants and co-conspirators of and with the knowledge and consent of each other, all within the course and scope of said relationship(s).

## III. FACTS COMMON TO ALL CAUSES OF ACTION

7. BLUE MARLIN was founded in 1994 as a headwear wholesaler. Its initial product line was inspired by teams from the Negro Leagues, the Latin Leagues, the Pacific Coast Leagues, and other defunct baseball teams from the early 1900's. Its early products included baseball caps which were an instant success and were soon worn by various celebrities, including Bruce Springsteen, Dusty Baker, Bruce Willis, Bono and others.

8. Beginning in 1996, BLUE MARLIN expanded into vintage-inspired sportswear consisting of sweatshirts, sweatpants, track jackets, polo shirts, t-shirts, jeans, bags, belts, footwear, and other items. Blue Marlin is currently sold in over 500 stories nationwide, including Marshall Field's, Lord & Taylor, Nordstorm and a variety of specialty stores.

9. On or about August 1, 2006 and August 2, 2006. BLUE MARLIN entered into a series of contracts with DEFENDANTS (hereinafter. the "CONTRACTS") under which DEFENDANTS would manufacture approximately 217,000 NO BOUNDARIES branded tee shirts and "hoodies" (hooded sweatshirts), (hereinafter "GOODS") for the cost of $956,674.80. NO BOUNDARIES is a private label owned by Wal-Mart Inc. (hereinafter, "WAL-MART") and the CONTRACTS specified the GOODS were to be sold at Wal-Mart, Inc. stores. The terms of

1    the CONTRACTS are both written and oral. Attached as Exhibit A is a true and accurate copy

2    of the CONTRACTS.

3    10.    WAL-MART requires suppliers of products in "high risk" categories, including

4    apparel, or suppliers of WAL-MART private label brands to conform to WAL-MART's ethical

5    standards for labor, wage, health, safety, and environmental protection (hereinafter "WAL-

6    MART'S ETHICAL STANDARDS") and participate in the WAL-MART ethical standards

7    program; requiring inspection by WAL-MART or WAL-MART contracted inspectors.

8    11.    In July 2006, BLUE MARLIN and DEFENDANTS negotiated the CONTRACTS

9    through a series of conversations between: (1) HUSSAIN, HASAN, and SAIGOL (who were

10    acting as representatives of EJAZ (through a company called MATRIX) are hereinafter referred

11    to as DEFENDANTS' REPRESENTATIVES) and (2) BLUE MARLIN's chief financial officer

12    Rick Ashley and account manager Tom Mayfield.

13    12.    During the negotiations, BLUE MARLIN's representatives told DEFENDANTS'

14    REPRESENTATIVES that the GOODS would be subject to WAL-MART'S ETHICAL

15    STANDARDS and that the factory DEFENDANTS' REPRESENTATIVES designated to

16    produce the GOODS would be subject to inspection by WAL-MART. BLUE MARLIN told

17    DEFENDANTS' REPRESENTATIVES that unless DEFENDANTS could assure BLUE

18    MARLIN that the factory they designated to produce the GOODS was in compliance with WAL-

19    MART'S ETHICAL STANDARDS, BLUE MARLIN would not place orders through

20    DEFENDANTS. DEFENDANTS' REPRESENTATIVES told Ashley and Mayfield that

21    DEFENDANTS had previously done business with WAL-MART and that DEFENDANTS were

22    familiar with WAL-MART's ethical sourcing program. DEFENDANTS' REPRESENTATIVES

23    assured BLUE MARLIN that the factory it would designate to produce the GOODS was and

24    would remain in compliance with WAL-MART'S ETHICAL STANDARDS.

25    ///

SOMMERS.LAW.GROUP
SAN FRANCISCO, CALIFORNIA

13.    DEFENDANTS' REPRESENTATIVES told Ashley and Mayfield that the factory that would produce its GOODS was EJAZ, located in Lahore, Pakistan.

14.    Based on DEFENDANTS' assurances and representations that DEFENDANTS would comply with WAL-MART'S ETHICAL STANDARDS, BLUE MARLIN placed a series of four orders on or about August 1, 2006 and August 2, 2006 with DEFENDANTS for production of the GOODS. DEFENDANTS were to deliver the GOODS on November 24, December 10, December 24 2007, and January 26, 2006. DEFENDANTS understood when they entered into the CONTRACTS with BLUE MARLIN that they would have to adhere to a variety of garment, delivery and packing requirements, as well as the WAL-MART ETHICAL STANDARDS, as indicated on the purchase orders as "APPAREL PERFORMANCE SPECIFICATIONS WILL NEED TO COMPLY TO CURRENT 'WAL-MART STORES APPAREL PERFORMANCE SPECIFICATIONS.'"

15.    On or around November 2006, WAL-MART notified DEFENDANTS that it intended to inspect and audit EJAZ for compliance with WAL-MART'S ETHICAL STANDARDS.

16.    On or about November 25, 2006, Intertek Testing Services Corp. (hereinafter "ITS"), an auditing firm contracted by WAL-MART, conducted an inspection and audit of EJAZ. The inspection and audit found approximately 18 labor, wage, health, safety and environmental violations of Pakistani law. Such violations are also violations of WAL-MART'S ETHICAL STANDARDS. A written report was issued (attached as Exhibit B) and given to BLUE MARLIN and DEFENDANTS on or about January 23, 2007.

17.    Shortly after BLUE MARLIN and DEFENDANTS received notice of the violations, HUSSAIN told Ashley and Mayfield that he was aware of the violations at EJAZ and had seen the report. During that conversation, Ashley and Mayfield told HUSSAIN that BLUE MARLIN did $10,000,000 of business with WAL-MART annually, and that WAL-MART

SOMMERS.LAW.GROUP
SAN FRANCISCO, CALIFORNIA

1    would cease doing business with BLUE MARLIN if DEFENDANTS did not quickly rectify the

2    violations at EJAZ of WAL-MART'S ETHICAL STANDARDS. HUSSAIN told Ashley and

3    Mayfield that he was aware of this and assured them DEFENDANTS would ensure that any and

4    all labor, wage, health, safety and environmental violations would be rectified.

5        18.    In approximately March 2007, HUSSAIN told Ashley and Mayfield that the

6    violations of WAL-MART'S ETHICAL STANDARDS at EJAZ had been rectified.

7        19.    On or about April 4, 2007, WAL-MART conducted a second inspection and

8    audit of EJAZ. The inspection and audit found further violations of Pakistani law and WAL-

9    MART'S ETHICAL STANDARDS: substantially the same violations which were found in

10   November 2006. On or about May 8, 2007, WAL-MART issued a report on these violations.

11   (see Exhibit C).

12       20.    On or about April 30, 2007, citing violations at EJAZ, WAL-MART informed

13   BLUE MARLIN that it would be ordering no further products from BLUE MARLIN.

14       21.    Based on DEFENDANTS' interference with BLUE MARLIN's business

15   relationship with WAL-MART and breach of the CONTRACTS, BLUE MARLIN has incurred

16   losses of $16,000,000, after deducting, *inter alia*, the cost of goods, marketing, design,

17   development and distribution.

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

SOMMERS.LAW.GROUP
SAN FRANCISCO, CALIFORNIA

## IV.    PLAINTIFF'S CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

As a separate and distinct claim for relief, BLUE MARLIN brings its First Cause of Action against DEFENDANTS for Negligent Interference with Prospective Economic Advantage, by alleging the following:

22.    BLUE MARLIN hereby incorporates by reference all of the above paragraphs as though set forth here in full.

23.    BLUE MARLIN and WAL-MART had an economic relationship which would have resulted in continued great economic benefit for BLUE MARLIN.

24.    DEFENDANTS knew of BLUE MARLIN's economic relationship with WAL-MART.

25.    DEFENDANTS knew or should have known BLUE MARLIN's economic relationship with WAL-MART would be disrupted if DEFENDANTS failed to act with reasonable care.

26.    DEFENDANTS failed to act with reasonable care by telling BLUE MARLIN that EJAZ was compliant with WAL-MART'S ETHICAL STANDARDS when it knew or should have known that EJAZ was not.

27.    As a result of DEFENDANTS' failure to act with reasonable care, BLUE MARLIN's economic relationship with WAL-MART was disrupted, causing BLUE MARLIN substantial harm.

28.    As a result of DEFENDANTS' negligence, BLUE MARLIN's future business with WAL-MART was cancelled and the business relationship between BLUE MARLIN and WAL-MART terminated. As a proximate result of DEFENDANTS' negligence, BLUE MARLIN has lost $16,000,000 in business from WAL-MART.

SOMMERS.LAW.GROUP
SAN FRANCISCO, CALIFORNIA

**SECOND CAUSE OF ACTION**
**INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC
ADVANTAGE**

As a separate and distinct claim for relief, BLUE MARLIN brings its Second Cause of Action against DEFENDANTS for Intentional Interference with Prospective Economic Advantage, by alleging the following:

29.   BLUE MARLIN hereby incorporates by reference all of the above paragraphs as though set forth here in full.

30.   BLUE MARLIN and WAL-MART had an economic relationship which would have resulted in a continued great economic benefit for BLUE MARLIN.

31.   DEFENDANTS knew of BLUE MARLIN's economic relationship with WAL-MART.

32.   DEFENDANTS intended to disrupt BLUE MARLIN's relationship with WAL-MART; deceiving BLUE MARLIN about EJAZ's failure to comply with WAL-MART'S ETHICAL STANDARDS.

33.   At all relevant times, DEFENDANTS knew or should have known EJAZ was not in compliance with WAL-MART'S ETHICAL STANDARDS. DEFENDANTS knew that since EJAZ failed to comply with WAL-MART'S ETHICAL STANDARDS, WAL-MART would severe its economic relationship with BLUE MARLIN. Nonetheless, DEFENDANTS repeatedly assured BLUE MARLIN that EJAZ was compliance with WAL-MART'S ETHICAL STANDARDS, when EJAZ was not and DEFENDANTS knew or should have known it was not.

34.   As a result of DEFENDANTS' willful and intentional conduct, WAL-MART terminated its economic relationship with BLUE MARLIN, resulting in the loss of all future profit from sales to WAL-MART. As a proximate result of DEFENDANTS' intentional conduct, BLUE MARLIN has lost $16,000,000 in business from WAL-MART.

///

SOMMERS.LAW.GROUP
SAN FRANCISCO, CALIFORNIA

1

2

### THIRD CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION

3      As a separate and distinct claim for relief, BLUE MARLIN brings its Third Cause of

4  Action against DEFENDANTS for Negligent Misrepresentation, by alleging the following:

5      35.    BLUE MARLIN hereby incorporates by reference all of the above paragraphs as

6  though set forth here in full.

7      36.    In or around late July 2006, DEFENDANTS, through DEFENDANTS'

8  representatives, represented to BLUE MARLIN that its designated factory was in compliance

9  with WAL-MART'S ETHICAL STANDARDS. DEFENDANTS also represented that

10  DEFENDANTS had done business with WAL-MART previously and were familiar with WAL-

11  MART'S ETHICAL STANDARDS. When DEFENDANTS made these representations they

12  had no reasonable basis for believing them to be true. In fact, DEFENDANTS' designated

13  factory, EJAZ, was in violation of WAL-MART'S ETHICAL STANDARDS.

14      37.    On or about mid-March 2007, DEFENDANTS were informed that WAL-MART

15  would be conducting a second audit and inspection of EJAZ. DEFENDANTS failed to disclose

16  to BLUE MARLIN that EJAZ was still in serious violation of WAL-MART'S ETHICAL

17  STANDARDS. DEFENDANTS knew these violations would result in WAL-MART

18  terminating its economic relationship with BLUE MARLIN. DEFENDANTS failed to disclose

19  this to PLAINTIFF, asserting that EJAZ was in compliance with WAL-MART'S ETHICAL

20  STANDARDS despite the fact that it had no reasonable basis for believing such assertions to be

21  true. DEFENDANTS knew BLUE MARLIN would reasonably rely on its false assertions

22  regarding EJAZ's compliance with the ethical standards

23      38.    As a proximate result of DEFENDANTS' negligent misrepresentations and

24  omissions of fact, BLUE MARLIN was induced to enter into a contract with DEFENDANTS,

25  resulting in damage to BLUE MARLIN in the amount of $15,000,000.

SOMMERS.LAW.GROUP
SAN FRANCISCO, CALIFORNIA

1

2

### FOURTH CAUSE OF ACTION
### INTENTIONAL MISREPRESENTATION

3      As a separate and distinct claim for relief, BLUE MARLIN brings its Fourth Cause of

4   Action against DEFENDANTS for Intentional Misrepresentation, by alleging the following:

5      39.    BLUE MARLIN hereby incorporates by reference all of the above paragraphs as

6   though set forth here in full.

7      40.    In or around late July 2006, DEFENDANTS, through DEFENDANTS'

8   representatives, represented to BLUE MARLIN that its designated factory was in compliance

9   with WAL-MART'S ETHICAL STANDARDS. DEFENDANTS also represented that

10  DEFENDANTS had done business with WAL-MART previously and were familiar with WAL-

11  MART'S ETHICAL STANDARDS. When DEFENDANTS made these representations they

12  knew the representations were false. In fact, DEFENDANTS' designated factory, EJAZ, was in

13  violation of WAL-MART'S ETHICAL STANDARDS.

14      41.    On or about January 23, 2007, WAL-MART forwarded the results of an audit and

15  inspection of EJAZ. The report stated EJAZ had committed approximately18 violations of labor,

16  wage, health, safety and environmental law of Pakistan which were also violations of WAL-

17  MART'S ETHICAL STANDARDS. After receiving this report, DEFENDANTS told Ashley

18  and Mayfield not to worry about the violations because the factory would quickly remedy them.

19  DEFENDANTS made these false misrepresentations intending to induce BLUE MARLIN to

20  rely upon them. DEFENDANTS intended to do nothing to remedy the violations. BLUE

21  MARLIN reasonably relied on these representations to its detriment.

22      42.    On or about April 4, 2007, WAL-MART conducted a second audit and inspection

23  of EJAZ. The results revealed the factory had committed still further labor, wage, health, safety

24  and environmental violations of Pakistani law and WAL-MART'S ETHICAL STANDARDS.

25  DEFENDANTS still knew EJAZ was not in compliance with WAL-MART'S ETHICAL

STANDARDS and that DEFENDANTS had done nothing to remedy the violations since the last

SOMMERS.LAW.GROUP
SAN FRANCISCO, CALIFORNIA

1    audit and inspection on or about November 25, 2006. DEFENDANTS' acts were conducted with

2    the intentional purpose of deceiving and defrauding BLUE MARLIN into retaining

3    DEFENDANTS as its manufacturer.

4        43.    As a direct and proximate result of DEFENDANTS' fraudulent conduct and false

5    statements, WAL-MART did not re-order BLUE MARLIN'S GOODS and terminated its

6    economic relationship with BLUE MARLIN, resulting in lost profit in the amount of

7    $16,000,000.

8        44.    DEFENDANTS' conduct consisted of a series of intentional fraud and deceit in

9    conscious disregard of BLUE MARLIN's rights so as to justify an award of exemplary and

10    punitive damages.

11

## FIFTH CAUSE OF ACTION
## BREACH OF CONTRACT

12

13

14        As a separate and distinct claim for relief, BLUE MARLIN brings the Fifth Cause of

15    Action against DEFENDANTS for Breach of Contract by alleging the following:

16        45.    BLUE MARLIN hereby incorporates by reference all of the above paragraphs as

17    though set forth here in full.

18        46.    DEFENDANTS and BLUE MARLIN entered into CONTRACTS for the

19    manufacture of the GOODS.

20        47.    DEFENDANTS promised, as a term of the CONTRACTS, to produce GOODS in

21    a factory which was in compliance with WAL-MART'S ETHICAL STANDARDS.

22        48.    DEFENDANTS materially breached the CONTRACTS by producing the

23    GOODS in a factory which was in serious violation of Pakistani law and WAL-MART'S

24    ETHICAL STANDARDS. Compliance of DEFENDANTS' designated factory was a condition

25    precedent for DEFENDANTS' manufacture of the GOODS and fulfillment of the

     CONTRACTS.

SOMMERS.LAW.GROUP
SAN FRANCISCO, CALIFORNIA

1       49.   BLUE MARLIN has performed all of its obligations under the CONTRACTS,

2   except those which are waived, excused or unenforceable.

3       50.   As a direct and proximate result of DEFENDANTS' material breaches of the

4   contracts, BLUE MARLIN has suffered damages in an amount subject to proof but not less than

5   $16,000,000.

6
<center>**SIXTH CAUSE OF ACTION**
**UNFAIR BUSINESS PRACTICE**</center>
7

8       As a separate and distinct claim for relief, BLUE MARLIN brings the Sixth Cause of

9   Action against DEFENDANTS for Unfair Business Practices, by alleging the following:

10      51.   BLUE MARLIN hereby incorporates by reference all of the above paragraphs as

11  though set forth here in full.

12      52.   At all relevant times, DEFENDANTS engaged in the unfair business practices of

13  intentionally and/or negligently deceiving BLUE MARLIN as described in above paragraphs.

14      53.   BLUE MARLIN pleads for injunctive relief in the form of an order mandating

15  DEFENDANTS cease all such practices and disgorge all profits made from such practices.

16
<center>**PRAYER FOR RELIEF**</center>
17

18      WHEREFORE, BLUE MARLIN respectfully prays for judgment against

    DEFENDANTS as follows:
19

20      1.   For compensatory damages in the amount of $16,000,000;

21      2.   For interest thereon at the legal rate of 10% per annum;

        3.   For costs of suit incurred herein;
22
        4.   For punitive and exemplary damages;
23
        5.   For attorney's fees incurred in this action;
24
        6.   For nominal damages;
25
        7.   For restitutionary relief;

SOMMERS.LAW.GROUP
SAN FRANCISCO, CALIFORNIA

8.     For injunctive relief;

9.     For such other and further relief as the Court deems just and equitable.

Dated: August __9__, 2007                                    SOMMERS LAW GROUP

                                                             Respectfully submitted,

                                                             STEPHEN A. SOMMERS
                                                             Attorney for Plaintiff
                                                             BLUE MARLIN, CORP.

SOMMERS.LAW.GROUP
SAN FRANCISCO, CALIFORNIA

**EXHIBIT A**

# EJAZ DYEING & FINISHING MILLS (PVT) LTD.

FACTORY : 10 KM RAIWIND ROAD LAHORE,PAKISTAN , PH:111-888-700
HEAD OFFICE : 34/E-1, MAIN GULBERG III, LAHORE, PAKISTAN
TEL : 111-899-899, 5760090, FAX : 5712563

| MANUFACTURERS NAME & ADDRESS | | | | |
|---|---|---|---|---|
| EJAZ DYEING & FINISHING MILLS (PVT) LTD | | | | |
| 10 KM RAIWIND ROAD LAHORE PAKISTAN | | | | |
| PH # 051-042-111 888 700 | | | | |

**COMMERCIAL INVOICE**

| NUMBER | EDF-M/81-MBM06 |
|---|---|
| DATE | 30-Nov-06 |

MID # : PKEJADYE10LAH

| For Account & Risk of | | P O # | 992 |
|---|---|---|---|
| BLUE MARLIN CORP | | STYLE # | A7NT102, A7NP102, A7NP302, A7NP202 |
| 299 KANSAS STREET | | TERMS | 45 DAYS D A |
| SANFRINSISCO, CA 94103 | | | |
| | | FORM "E" # PCC 0125133 DATED 29-11-06 TOTAL CTNS 4511 TOTAL PCS 35,088 US$: 129,525.60 | |
| CONSIGNEE | | FORM "E" # PCC 0125132 DATED 29-11-06 TOTAL CTNS 5545 TOTAL PCS 44,360 US$ :158,064.00 | |
| BLUE MARLIN CORP | | SHIP FROM | KARACHI, PAKISTAN |
| 299 KANSAS STREET | | FINAL DESTINATION | LONGBEACH , USA |
| SANFRINSISCO, CA 94103 | | SHIP BY | SEA |
| | | TERMS | FOB |

| SHIPPING MARKS | DESCRIPTION | | | QUANTITY IN PCS | UNIT PRICE IN US$ | TOTAL PRICE IN US$ |
|---|---|---|---|---|---|---|
| | **MENS 100% COTTON S/S CREW NECK KNITTED SHIRTS** | | | | | |
| BRONX SUPPLY CORP | | | | | | |
| P O  NO | P.O.# | B.M STYLE # | W.M STYLE # | | | |
| QTY | 992 | A7NT102 | NB17C502 | 20,088 | $3.45 | $69.... |
| CARTON NO | | A7NP102 | NB17C500 | 20,088 | $3.70 | $74.... |
| G WT | 992 | A7N.... | NB17C511 | 20,164 | $3.45 | $69,634.80 |
| NET WT | 992 | A7N.... | NB17C506 | 20,068 | $3.70 | $74,325.60 |
| MEASUREMENT | | | | | | |
| COUNTRY OF ORIGIN | | | | | | |
| PAKISTAN | | | | | | |
| TOTAL PIECES | | 80,448 PCS | | | | |
| TOTAL CARTONS | | 10,056 CTNS | | | | |
| TOTAL NET  WT | | 16,592 KGS | | | | |
| TOTAL GROSS WT | | 29,665 KGS | | | | |

| US DOLLARS :  TWO HUNDRED EIGHTY SEVEN THOUSAND FIVE HUNDRED EIGHTY NINE & CENTS SIXTY ONLY. | 80,449 PCS | $287,589.60 |
|---|---|---|

CERTIFIED THAT GOODS ARE OF PAKISTAN ORIGIN.

for EJAZ DYEING & FINISHING MILLS (PVT) LTD

AUTHORIZED SIGNATURE

# EJAZ DYEING & FINISHING MILLS (PVT) LTD.

FACTORY : 10 KM RAIWIND ROAD LAHORE,PAKISTAN , PH:111-688-700
HEAD OFFICE : 34/E-1, MAIN GULBERG III, LAHORE, PAKISTAN
TEL : 111-699-699, 5760090, FAX : 5712563

| MANUFACTURERS NAME & ADDRESS | | |
|---|---|---|
| EJAZ DYEING & FINISHING MILLS (PVT) LTD | | |
| 10 KM RAIWIND ROAD LAHORE PAKISTAN | | |
| PH # 091-042-111 688 700 | | |

**MID # : PKEJADYE10LAH**

## COMMERCIAL INVOICE

| NUMBER | EDFM/90-MBM/06 |
|---|---|
| DATE | 11-Dec-06 |

| For Account & Risk of | | P.O # | 992 |
|---|---|---|---|
| BLUE MARLIN CORP | | STYLE # | A7NT202 |
| 299 KANSAS STREET | | TERMS | 45 DAYS D A |
| SANFRINSISCO, CA 94103 | | | |
| | | FORM 'E' # | PCC 0125143 |
| CONSIGNEE | | DATE: | 9-Dec-06 |
| BLUE MARLIN CORP | | SHIP FROM: | KARACHI, PAKISTAN |
| 299 KANSAS STREET | | FINAL DESTINATION | LONGBEACH , USA |
| SANFRINSISCO, CA 94103 | | SHIP BY: | SEA |
| | | TERMS: | FOB |

| SHIPPING MARKS | DESCRIPTION | | | QUANTITY IN PCS | UNIT PRICE IN US$ | TOTAL PRICE IN US$ |
|---|---|---|---|---|---|---|
| | **MENS 100% COTTON S/S CREW NECK KNITTED SHIRTS** | | | | | |
| BLUE MARLIN CORP | P.O.# | B.M STYLE # | W.M STYLE # | | | |
| P.O NO. | 992 | A7NT202 | NB17C503 | 20,088 | $3 45 | $69,303 60 |
| QTY | | | | | | |
| CARTON NO | | | | | | |
| G WT | | | | | | |
| NET WT | | | | | | |
| MEASUREMENT | | | | | | |
| COUNTRY OF ORIGIN | | | | | | |
| PAKISTAN | | | | | | |
| | TOTAL PIECES | | 20,088 PCS | | | |
| | TOTAL CARTONS : | | 2,511 CTNS | | | |
| | TOTAL NET WT : | | 4,143 KGS | | | |
| | TOTAL GROSS WT . | | 6,654 KGS | | | |

| US DOLLARS : SIXTY NINE THOUSAND THREE HUNDRED THREE & CNET'S SIXTY ONLY.. | 20,088 PCS | | $69,303 60 |
|---|---|---|---|

CERTIFIED THAT GOODS ARE OF PAKISTAN ORIGIN.

*for EJAZ DYEING & FINISHING MILLS*



**EJAZ DYEING & FINISHING MILLS (PVT) LTD.**
FACTORY : 10 KM RAIWIND ROAD LAHORE,PAKISTAN , PH:111-888-700
HEAD OFFICE : 34/E-1, MAIN GULBERG III, LAHORE, PAKISTAN
TEL : 111-899-699, 5760090, FAX : 5712563

## COMMERCIAL INVOICE

| MANUFACTURERS NAME & ADDRESS |
| --- |
| E ∵ DYEING & FINISHING MILLS (PVT) LTD |
| 10 KM RAIWIND ROAD LAHORE PAKISTAN |
| PH # 091-042-111 688 700 |

| NUMBER | EDFM/100-MBM/06 |
| --- | --- |
| DATE | 26-Dec-06 |

| MID # : PKEJADYE10LAH |
| --- |

| For Account & Risk of | | P.O # | 992 | |
| --- | --- | --- | --- | --- |
| BLUE MARLIN CORP | | STYLE # | A7NP302 | |
| 299 KANSAS STREET | | TERMS | 45 DAYS D.A. | |
| SANFRINSISCO. CA 94103 | | FORM 'E' # | PCC-0125127 | |
| CONSIGNEE | | DATE: | 23-Dec-06 | |
| BLUE MARLIN CORP | | SHIP FROM: | KARACHI, PAKISTAN | |
| 299 KANSAS STREET | | FINAL DESTINATION | LONGBEACH , USA | |
| SANFRINSISCO, CA 94103 | | SHIP BY: | SEA | |
| | | TERMS: | C&F | |

| SHIPPING MARKS | DESCRIPTION | | | QUANTITY IN PCS | UNIT PRICE IN US$ | TOTAL PRICE IN US$ |
| --- | --- | --- | --- | --- | --- | --- |
| | MENS 100% COTTON S/S CREW NECK KNITTED SHIRTS | | | | | |
| ∵ NO | P.O.# | B.M STYLE # | W.M STYLE # | 19,936 | $3.70 | $73,763.20 |
| QTY | 992 | A7NP302 | NB17C510 | | | |
| CARTON NO | | | | | | |
| G.WT | | | | | | |
| NET WT | | | | | | |
| MEASUREMENT | | | | | | |
| COUNTRY OF ORIGIN | | | | | | |
| PAKISTAN | | | | | | |
| | TOTAL PIECES | 19,936 PCS | | | | |
| | TOTAL CARTONS | 2,492 CTNS | | | | |
| | TOTAL NET WT : | 4,111 KGS | | | | |
| | TOTAL GROSS WT | 7,352 KGS | | | | |

| US DOLLARS : SEVENTY THREE THOUSAND SEVEN HUNDRED SIXTY THREE & CENTS TWENTY ONLY. | 19,936 PCS | | $73,763.20 |
| --- | --- | --- | --- |

CERTIFIED THAT GOODS ARE OF PAKISTAN ORIGIN.

*for EJAZ DYEING & FINISHING MILLS (PVT) LTD*

AUTHORIZED SIGNATURE

```
Page: 1                        BLUE MARLIN CORP.              P.O. #    992
                                299 KANSAS ST
                             SAN FRANCISCO, CA 94103

                           OVERSEAS PURCHASE ORDER #992

FACTORY:                                      SHIP TO:
MATRIX SOURCING                               JAM-N/ BLUE MARLIN, INC.
NO. 10-11. BLOCK H-111                        2140 UNIVERSITY DRIVE
JOHAR TOWN .                                  RANCHO DOMINGUEZ, CA 90220

LAHORE,
PAKISTAN

--------------------------------------------------------------------------------
Order Date ETD Date   ETA Date   Carrier              Comment         Terms
08/01/2006 11/14/2006 12/10/2006 OCEAN               NOBO3 SET IN    CAA + 45 DAYS

Duty Category    Label                  Hang Tag            Packaging
                 NOBO                     NOBO              SEE BELOW
--------------------------------------------------------------------------------
                                                     TOTAL              TOTAL
STYLE    COLOR     C  S    M    L     XL   UNITS  FOB PRICE    COST
======= =========== = ===== ====== ====== ====== ======== ========== ==========
NEW YORK STRIPE TEE              Memo: NB17C500
A7NP102  338 OLIVE  C  2511  5022  7533  5022   20088    3.500   70308.00

NY ROCK PIECED STRIPE TEE        Memo: NB17C506
A7NP202  115 ARCTIC C  2511  5022  7533  5022   20088    3.500   70308.00

ROCK & ROLL PIECED STRIPE TEE    Memo: NB17C510
A7NP302  039 H GREY C  2511  5022  7533  5022   20088    3.500   70308.00

UNITED HAWK SEEDSTITCH TEE       Memo: NB17C502
A7NT102  A9 BLACK S C  2511  5022  7533  5022   20088    3.250   65286.00

LION CROWN SEEDSTITCH TEE        Memo: NB17C503
A7NT202  115 ARCTIC C  2511  5022  7533  5022   20088    3.250   65286.00

N.E SNAKE SEEDSTITCH TEE         Memo: NB17C511
A7NT302  416 BLUE A C  2511  5022  7533  5022   20088    3.250   65286.00

SKULL & SNAKE HOODIE             Memo: NB17C505
A7NH134  217 DK BWN C  2879  5758  5758  2879   17274    7.200  124372.80

575 MOTORCYCLE HOODIE            Memo: NB17C508
A7NH234  039 H GREY C  2879  5758  5758  2879   17274    7.200  124372.80

                                        --------            ----------
                      Current Totals     155076             655527.60
                      Additional Costs                           0.00
                      Quota Cost                                 0.00
                                                            ==========
                      P.O. Total                            655527.60

** Special Instructions *****************************************

                  <<< continued on the next page >>>
```

Page: 2                          BLUE MARLIN CORP.                    P.O. #      992
                                    299 KANSAS ST
                               SAN FRANCISCO, CA 94103

                               OVERSEAS PURCHASE ORDER #992

FACTORY:                                          SHIP TO:
MATRIX SOURCING                                   JAM-N/ BLUE MARLIN, INC.
NO. 10-11. BLOCK H-111                            2140 UNIVERSITY DRIVE
JOHAR TOWN .                                      RANCHO DOMINGUEZ, CA 90220

LAHORE,
PAKISTAN

------------------------------------------------------------------------------------------
Order Date ETD Date   ETA Date   Carrier                Comment          Terms
08/01/2006 11/14/2006 12/10/2006 OCEAN                  NOBO3 SET IN    CAA + 45 DAYS

Duty Category    Label                    Hang Tag                 Packaging
                 NOBO                     NOBO                      SEE BELOW
------------------------------------------------------------------------------------------

** Special Instructions ******************************************

1)TESTING WILL NEED TO COMPLY TO "WAL*MART PHYSICAL TESTING PROGRAM FOR
APPAREL/ACCESORIES/SOKS" AS DATE REVISED :SEPTEMBER 2004.
2)APPAREL PERFORMANCE SPECIFICATIONS WILL NEED TO COMPLY TO CURRECT "WAL*MART
STORES APPAREL PERFORMANCE SPECIFICATIONS".
HANGER FOR TEE W491, 19" TOP HANGER.JACKET HANGER W529 ,19" HEAVY WEIGHT
HANGER.
ALL GARMETNS AS PER WAL*MART GARMENT PRESENTATION ADULT'S TOP.
PACKING AS PER WAL*MART FLOOR READY APPAREL-PACKING REQUIRMENTS.
HANGTAG USE 3" BLACK SWIFT ATTACH UNDER WEARER'S LEFT ARM.HANGTAG BARCODE MUST
BE VISIBLE.
TEE TOTAL 8PCS(1S-2M-3L-2XL)SINGLE STYLE IN ONE CARTON.(1S+3L) AND (2M+2XL)
PLACE THE OUTER POLYBAG OVER THE 4PIECE,
HOODIE TOTAL 6PCS(1S-2M-2L-1XL) SINGLE STYLE IN ONE POLYBAG AND THAN FOLD
GARMENT IN HALD BY BRINGING THE BCARTON AND THAN FOLD GARMENTS IN HALF BY
BOTTOM HEM UP TO THE TOP OF THE HANGER.DO NOT USE RUBBER BAND IN ONE CARTON.
MASTER CARTON MARKING :PRINT ON ONE(1) LONGEST SIDE OF EACH MASTER SHIPPING
CARTON.ONLY ONE LONGEST SIDE.
SHIPPING DEVIATION +/- 1% PER STYLE AND SIZE ONLY.

# EJAZ DYEING & FINISHING MILLS (PVT) LTD.

FACTORY : 10 KM RAIWIND ROAD LAHORE,PAKISTAN , PH:111-888-700
HEAD OFFICE : 34/E-1, MAIN GULBERG iii, LAHORE, PAKISTAN
TEL : 111-889-899, 5760090, FAX : 5712563

| MANUFACTURERS NAME & ADDRESS |
| --- |
| EJAZ DYEING & FINISHING MILLS (PVT) LTD |
| 10 KM RAIWIND ROAD LAHORE PAKISTAN |
| PH # 091-042-111 888 700 |

## COMMERCIAL INVOICE

| | |
| --- | --- |
| NUMBER | EDFM/77-MBM/06 |
| DATE | 4-Dec-06 |

MID # : PKEJADYE10LAH

| For Account & Risk of | | P.O # | 993 |
| --- | --- | --- | --- |
| BLUE MARLIN CORP , | | STYLE # | A7NP202 , A7NP302 , A7NT102 , A7NT202 , A7NP102 , A7NT202 |
| 299 KANSAS STREET | | | |
| SAN FRANCISCO , CA 94103 | | PAYMENT TERM | 10 DAYS D.A. |
| | | FORM 'E' # | PCC-0125140 |
| SHIP TO | | DATE: | 4-Dec-06 |
| BLUE MARLIN INC , | | SHIP FROM: | LAHORE, PAKISTAN |
| 990A BEECHER ST, | | SHIP TO: | SAN FRANCISCO USA |
| SAN LEANDRO , CA 64577 | | SHIP BY: | AIR |
| | | TERMS: | FOB |

| SHIPPING MARKS | DESCRIPTION | | | QUANTITY IN PCS | UNIT PRICE IN US$ | TOTAL PRICE IN US$ |
| --- | --- | --- | --- | --- | --- | --- |
| BLUE MARLIN INC , | MENS 100% COTTON S/S CREW KNITTED SHIRTS.. | | | | | |
| P.O. NO. | P.O.# | B.M STYLE# | W.M STYLE# | | | |
| QTY. | 993 | A7NP202 | NB17C506 | 720 | $3.70 | $2,664.00 |
| CARTON NO | 993 | A7NP302 | NB17C510 | 720 | $3.70 | $2,664.00 |
| G WT | 993 | A7NT102 | NB17C502 | 720 | $3.45 | $2,484.00 |
| NET WT | 993 | A7NT202 | NB17C503 | 720 | $3.45 | $2,484.00 |
| MEASUREMENT | 993 | A7NP102 | NB17C500 | 720 | $3.70 | $2,664.00 |
| COUNTRY OF ORIGIN | 993 | A7NT202 | NB17C511 | 720 | $3.45 | $2,484.00 |
| PAKISTAN | | | | | | |

| | | | |
| --- | --- | --- | --- |
| TOTAL PIECES | 4,320 PCS | | |
| TOTAL CARTONS | 540 CTNS | | |
| TOTAL NET WT | 891 KGS | | |
| TOTAL GROSS WT | 1,560 KGS | | |

| US DOLLARS : FIFTEEN THOUSAND FOUR HUNDRED FORTY FOUR ONLY . | 4,320 PCS | | $15,444.00 |
| --- | --- | --- | --- |

CERTIFIED THAT GOODS ARE OF PAKISTAN ORIGIN.

for EJAZ DYEING & FINISHING MILLS (PVT) ...
AUTHORIZED SIGNATURE

Page: 1                    BLUE MARLIN CORP.              P.O. #    993
                              299 KANSAS ST
                           SAN FRANCISCO, CA 94103

                        OVERSEAS PURCHASE ORDER #993

FACTORY:                                 SHIP TO:
MATRIX SOURCING                          BLUE MARLIN, INC.
NO. 10-11. BLOCK H-111                   990A BEECHER ST.
JOHAR TOWN .                             SAN LEANDRO, CA 64577

LAHORE,
PAKISTAN

----------------------------------------------------------------------------------
Order Date ETD Date   ETA Date   Carrier          Comment       Terms
08/02/2006 10/24/2006 11/24/2006 OCEAN            NOBO3 NEW SET  CAA + 45 DAYS

Duty Category    Label               Hang Tag            Packaging
                 NOBO                NOBO                SEE BELOW
----------------------------------------------------------------------------------
                                              TOTAL              TOTAL
STYLE    COLOR    C   S    M    L    XL    UNITS   POB PRICE    COST
======== ========= = ====== ===== ===== ====== ======== ========== ==========
NEW YORK STRIPE TEE          Memo: NB17C500
A7NP102  338 OLIVE  C    90  180   270   180     720     3.500     2520.00

NY ROCK PIECED STRIPE TEE    Memo: NB17C506
A7NP202  115 ARCTIC C    90  180   270   180     720     3.500     2520.00

ROCK & ROLL PIECED STRIPE TEE   Memo: NB17C510
A7NP302  039 H GREY  C   90  180   270   180     720     3.500     2520.00

UNITED HAWK SEEDSTITCH TEE   Memo: NB17C502
A7NT102  A9 BLACK S C    90  180   270   180     720     3.250     2340.00

LION CROWN SEEDSTITCH TEE    Memo: NB17C503
A7NT202  115 ARCTIC C    90  180   270   180     720     3.250     2340.00

N.E SNAKE SEEDSTITCH TEE     Memo: NB17C511
A7NT302  416 BLUE A C    90  180   270   180     720     3.250     2340.00

SKULL & SNAKE HOODIE         Memo: NB17C505
A7NH134  217 DK BWN C    90  180   180    90     540     7.200     3888.00

575 MOTORCYCLE HOODIE        Memo: NB17C508
A7NN234  039 H GREY C    90  180   180    90     540     7.200     3888.00
                                               --------           ----------
                             Current Totals      5400             22356.00
                             Additional Costs                         0.00
                             Quota Cost                               0.00
                                                                 ==========
                             P.O. Total                           22356.00

** Special Instructions **************************************

<<< continued on the next page >>>

```
Page: 2                    BLUE MARLIN CORP.                P.O. #    993
                             299 KANSAS ST
                         SAN FRANCISCO, CA 94103

                       OVERSEAS PURCHASE ORDER #993


FACTORY:                                    SHIP TO:
MATRIX SOURCING                             BLUE MARLIN, INC.
NO. 10-11. BLOCK H-111                      990A BEECHER ST.
JOHAR TOWN .                                SAN LEANDRO, CA 64577

LAHORE,
PAKISTAN

------------------------------------------------------------------------------
Order Date ETD Date   ETA Date   Carrier          Comment        Terms
08/02/2006 10/24/2006 11/24/2006 OCEAN            NOBO3 NEW SET   CAA + 45 DAYS

Duty Category    Label              Hang Tag              Packaging
                 NOBO               NOBO                  SEE BELOW
------------------------------------------------------------------------------

** Special Instructions ****************************************


1)TESTING WILL NEED TO COMPLY TO "WAL*MART PHYSICAL TESTING PROGRAM FOR
APPAREL/ACCESORIES/SOKS" AS DATE REVISED :SEPTEMBER 2004.
2)APPAREL PERFORMANCE SPECIFICATIONS WILL NEED TO COMPLY TO CURRECT "WAL*MART
STORES APPAREL PERFORMANCE SPECIFICATIONS".
HANGER FOR TEE W491, 19" TOP HANGER.JACKET HANGER W529 ,19" HEAVY WEIGHT
HANGER.
ALL GARMETNS AS PER WAL*MART GARMENT PRESENTATION ADULT'S TOP.
PACKING AS PER WAL*MART FLOOR READY APPAREL-PACKING REQUIRMENTS.
HANGTAG USE 3" BLACK SWIFT ATTACH UNDER WEARER'S LEFT ARM.HANGTAG BARCODE MUST
BE VISIBLE.
TEE TOTAL 8PCS (1S-2M-3L-2XL) AND HOODIE TOTAL 6PCS(1S-2M-2L-1XL) SINGLE STYLE
IN ONE CARTON.TEE(1S+3L) AND (2M+2XL) AND HOODIE 6PCS(1-2-2-1)PLACE THE OUTER
POLYBAG OVER  AND THAN FOLD GARMENTS IN HALF BY BRINGING THE BOTTOM HEM UP TO
THE TOP OF THE HANGER.DO NOT USE RUBBER BAND.
MASTER CARTON MARKING :PRINT ON ONE(1) LONGEST SIDE OF EACH MASTER SHIPPING
CARTON.ONLY ONE LONGEST SIDE.
SHIPPING DEVIATION +/- 1% PER STYLE AND SIZE ONLY.
```

# EJAZ DYEING & FINISHING MILLS (PVT) LTD.
FACTORY : 10 KM RAIWIND ROAD LAHORE,PAKISTAN , PH:111-888-700
HEAD OFFICE : 34/E-1, MAIN GULBERG III, LAHORE, PAKISTAN
TEL : 111-699-699, 5760090, FAX : 5712563

## COMMERCIAL INVOICE

| MANUFACTURERS NAME & ADDRESS |
| --- |
| EJAZ DYEING & FINISHING MILLS (PVT) LTD |
| 10 KM RAIWIND ROAD LAHORE PAKISTAN |
| PH # 091-042-111 688 700 |

| MID # : PKEJADYE10LAH |
| --- |

| NUMBER | EDFM/94-MBM/06 |
| --- | --- |
| DATE | 18-Dec-06 |

| For Account & Risk of | | P.O # | 995 |
| --- | --- | --- | --- |
| BLUE MARLIN CORP | | STYLE # | A7NP102, A7NP202, A7NP302 ,A7NT102 ,A7NT202 ,A7NT302 |
| 299 KANSAS STREET | | TERMS | 45 DAYS D.A. |
| SANFRANSISCO, CA 94103 | | FORM 'E' # | PCC-0125147 |
| | | DATE: | 16-Dec-06 |
| CONSIGNEE | | SHIP FROM: | KARACHI, PAKISTAN |
| BLUE MARLIN CORP | | FINAL DESTINATION | LONGBEACH , USA |
| 299 KANSAS STREET | | SHIP BY: | SEA |
| SANFRANSISCO, CA 94103 | | TERMS: | FOB |

| SHIPPING MARKS | DESCRIPTION | | | QUANTITY IN PCS | UNIT PRICE IN US$ | TOTAL PRICE IN US$ |
| --- | --- | --- | --- | --- | --- | --- |
| | **MENS 100% COTTON S/S CREW NECK KNITTED SHIRTS** | | | | | |
| BLUE MARLIN CORP | | | | | | |
| P O NO. | **P.O #** | **B.M STYLE #** | **W.M STYLE #** | | | |
| QTY | 995 | A7NP102 | NB17C500 | 3,156 | $3.70 | $11,677.20 |
| CARTON NO | 995 | A7NT302 | NB17C511 | 3,276 | $3.45 | $11,302.20 |
| G WT | 995 | A7NT102 | NB17C502 | 3,060 | $3.45 | $10,557.00 |
| NET WT | 995 | A7NT202 | NB17C503 | 2,508 | $3.45 | $8,652.60 |
| MEASUREMENT | 995 | A7NP202 | NB17C506 | 2,580 | $3.70 | $9,546.00 |
| COUNTRY OF ORIGIN | 995 | A7NP302 | NB17C510 | 3,168 | $3.70 | $11,721.60 |
| PAKISTAN | | | | | | |

| | | | |
| --- | --- | --- | --- |
| TOTAL PIECES    : | 17,748 PCS | | |
| TOTAL CARTONS : | 1,479 CTNS | | |
| TOTAL NET  WT  : | 3,649 KGS | | |
| TOTAL GROSS WT | 5,128 KGS | | |

| US DOLLARS :  SIXTY THREE THOUSAND FOUR HUNDRED FIFTY SIX & CENTS SIXTY ONLY. | 17,748 PCS | | $63,456.60 |
| --- | --- | --- | --- |

CERTIFIED THAT GOODS ARE OF PAKISTAN ORIGIN

for EJAZ DYEING & FINISHING MILLS (PVT) LTD
AUTHORIZED SIGNATURE



```
Page: 1                      BLUE MARLIN CORP.              P.O. #      995
                               299 KANSAS ST
                             SAN FRANCISCO, CA 94103

                          OVERSEAS PURCHASE ORDER #995

FACTORY:                                   SHIP TO:
MATRIX SOURCING                            BLUE MARLIN, INC.
NO. 10-11. BLOCK H-111                     990A BEECHER ST.
JOHAR TOWN .                               SAN LEANDRO, CA 64577

LAHORE,
PAKISTAN

-----------------------------------------------------------------------------------
Order Date ETD Date   ETA Date   Carrier             Comment         Terms
08/02/2006 11/24/2006 12/24/2006 OCEAN               NOBO3 RELP      CAA + 45 DAYS

Duty Category    Label                   Hang Tag              Packaging
                 NOBO                    NOBO                  SEE BELOW
-----------------------------------------------------------------------------------
                                              TOTAL                    TOTAL
STYLE    COLOR     C  S    M    L     XL      UNITS   FOB PRICE        COST
======== ========= = ===== ===== ===== ===== ======= ========= ==========
NEW YORK STRIPE TEE              Memo: NB17C500
A7NP102  338 OLIVE C    480   792  1104   792    3168     3.500  11088.00

NY ROCK PIECED STRIPE TEE        Memo: NB17C506
A7NP202  115 ARCTIC C   480   792  1104   792    3168     3.500  11088.00

ROCK & ROLL PIECED STRIPE TEE    Memo: NB17C510
A7NP302  039 H GREY C   480   792  1104   792    3168     3.500  11088.00

UNITED HAWK SEEDSTITCH TEE       Memo: NB17C502
A7NT102  A9 BLACK S C   480   792  1104   792    3168     3.250  10296.00

LION CROWN SEEDSTITCH TEE        Memo: NB17C503
A7NT202  115 ARCTIC C   480   792  1104   792    3168     3.250  10296.00

N.E SNAKE SEEDSTITCH TEE         Memo: NB17C511
A7NT302  416 BLUE A C   480   792  1104   792    3168     3.250  10296.00

SKULL & SNAKE HOODIE             Memo: NB17C505
A7NH134  217 DK BWN C   948  1572  2196  1572    6288     7.200  45273.60

575 MOTORCYCLE HOODIE            Memo: NB17C508
A7NH234  039 H GREY C   948  1572  2196  1572    6288     7.200  45273.60
                                                 --------        ----------
                          Current Totals          31584          154699.20
                          Additional Costs                            0.00
                          Quota Cost                                  0.00
                                                                ==========
                          P.O. Total                            154699.20

** Special Instructions ******************************************

                    <<< continued on the next page >>>
```

Page: 2                         BLUE MARLIN CORP.                  P.O. #      995
                                299 KANSAS ST
                                SAN FRANCISCO, CA 94103

                            OVERSEAS PURCHASE ORDER #995

FACTORY:                                          SHIP TO:
MATRIX SOURCING                                   BLUE MARLIN, INC.
NO. 10-11. BLOCK H-111                            990A BEECHER ST.
JOHAR TOWN .                                      SAN LEANDRO, CA 64577

LAHORE,
PAKISTAN

--------------------------------------------------------------------------------------
Order Date ETD Date  ETA Date   Carrier                 Comment        Terms
08/02/2006 11/24/2006 12/24/2006 OCEAN                  NOBO3 RELP     CAA + 45 DAYS

Duty Category    Label                 Hang Tag                 Packaging
                 NOBO                  NOBO                      SEE BELOW
--------------------------------------------------------------------------------------

** Special Instructions ******************************************

1)TESTING WILL NEED TO COMPLY TO "WAL*MART STORES PHYSICAL TESTING PROGRAM FOR
APPAREL/ACCESSORIES/SOKS" AS DATE REVISED :SEPTEMBER 2004.
2)APPAREL PERFORMANCE SPECIPIACTIONS WILL NEED TO COMPLY TO CURRECT "WAL*MART
STORES APPAREL PERFORMANCE SPECIFICATIONS"
ALL GARMENTS AS PER WAL*MART GARMENT PERSENTATION ADULT'S TOP.
PACKING AS PER WAL*MART FLOOR READY APPAREL-PACKING REQUIRMENTS.
TEE HANGER W-491, 19" TOP HANGER.
JACKET W-529, 19" HEAVY WEIGHT TOP HANGER.
HANGTAG USE 3" BLACK SWIFT ATTACH UNDER WEARER'S LEFT ARM. HANGTAG BARCODE MUST
BE VISIBLE.
TOTAL 12PCS SINGLE STYLE AND SIZE IN ONE CARTON.TWO GARMENTS SAME STYLE AND
SIZE IN ONE POLYBAG AND HEAT-SEALED.THAN FOLD GARMENTS IN HALF BY BRINGING THE
BOTTOM HEM UP TO THE TOP OF HANGER.DO NOT USE RUBBER BANDS.
MASTER CARTON MARKING:PRINT ON ONE(1)LONGEST SIDE OF EACH MASTER SHIPPING
CARTON.ONLY ONE LONGEST SIDE.
SHIPPING DEVIATION +/- 1% PER STYLE AND SIZE ONLY.

# EJAZ DYEING & FINISHING MILLS (PVT) LTD.

FACTORY : 10 KM RAIWIND ROAD LAHORE,PAKISTAN , PH:111-688-700
HEAD OFFICE : 34/E-1, MAIN GULBERG III, LAHORE, PAKISTAN
TEL : 111-699-699, 5760090, FAX : 5712563

## COMMERCIAL INVOICE

| MANUFACTURERS NAME & ADDRESS |
|---|
| EJAZ DYEING & FINISHING MILLS (PVT) LTD |
| 10 KM RAIWIND ROAD LAHORE PAKISTAN |
| PH # 091-042-111 688 700 |

| MID # : PKEJADYE10LAH |
|---|

| | | NUMBER | EDFM/95-MBM/06 |
|---|---|---|---|
| | | DATE | 21-Dec-06 |

| For Account & Risk of | | P.O # | 997 |
|---|---|---|---|
| BLUE MARLIN CORP | | STYLE # | A7NP102, A7NP202, A7NP302 ,A7NT102 ,A7NT202 ,A7NT302 |
| 299 KANSAS STREET | | TERMS | 45 DAYS D.A. |
| SANFRINSISCO, CA 94103 | | | |
| | | FORM 'E' # | PCC-0125146 |
| CONSIGNEE | | DATE: | 20-Dec-06 |
| BLUE MARLIN CORP | | SHIP FROM: | KARACHI, PAKISTAN |
| 299 KANSAS STREET | | FINAL DESTINATION | LONGBEACH , USA |
| SANFRINSISCO. CA 94103 | | SHIP BY: | SEA |
| | | TERMS: | FOB |

| SHIPPING MARKS | DESCRIPTION | | | QUANTITY IN PCS | UNIT PRICE IN US$ | TOTAL PRICE IN US$ |
|---|---|---|---|---|---|---|
| | MENS 100% COTTON S/S  CREW NECK KNITTED SHIRTS | | | | | |
| BLUE MARLIN CORP | | | | | | |
| P.O  NO | P.O # | B.M STYLE # | W.M STYLE # | | | |
| QTY | 997 | A7NP102 | NB17C500 | 2,592 | $3.70 | $9,590.40 |
| . . . N NO | 997 | A7NT202 | NB17C503 | 2,448 | $3.45 | $8,445.60 |
| G WT | 997 | A7NT302 | NB17C511 | 2,628 | $3.45 | $9,066.60 |
| NET WT | 997 | A7NT102 | NB17C502 | 2,484 | $3.45 | $8,569.80 |
| MEASUREMENT | 997 | A7NP202 | NB17C506 | 2,400 | $3.70 | $8,880.00 |
| COUNTRY OF ORIGIN | 997 | A7NP302 | NB17C510 | 2,544 | $3.70 | $9,412.80 |
| PAKISTAN | | | | | | |
| | TOTAL PIECES        : | 15,096 PCS | | | | |
| | TOTAL CARTONS   : | 1,258 CTNS | | | | |
| | TOTAL NET  WT : | 3,103 KGS | | | | |
| | TOTAL GROSS WT : | 4,361 KGS | | | | |

| US DOLLARS :  FIFTY THREE THOUSAND NINE HUNDRED SIXTY FIVE & CENTS TWENTY ONLY. | 15,096 PCS | | $53,965.20 |
|---|---|---|---|

CERTIFIED THAT GOODS ARE OF PAKISTAN ORIGIN.

*for EJAZ DYEING & FINISHING MILLS (PVT) LTD.*

AUTHORIZED SIGNATURE

```
Page: 1                    BLUE MARLIN CORP.                P.O. #        997
                             299 KANSAS ST
                          SAN FRANCISCO, CA 94103

                          OVERSEAS PURCHASE ORDER #997

FACTORY:                                    SHIP TO:
MATRIX SOURCING                             BLUE MARLIN, INC.
NO. 10-11. BLOCK H-111                      990A BEECHER ST.
JOHAR TOWN .                                SAN LEANDRO, CA 64577

LAHORE,
PAKISTAN

-------------------------------------------------------------------------------------
Order Date ETD Date   ETA Date  Carrier              Comment        Terms
08/02/2006 12/26/2006 01/26/2006 OCEAN               NOBO3 RELP     CAA + 45 DAYS

Duty Category   Label               Hang Tag                Packaging
                NOBO                NOBO                     SEE BELOW
-------------------------------------------------------------------------------------
                                          TOTAL                     TOTAL
STYLE   COLOR      C  S    M    L    XL    UNITS  FOB PRICE  COST
======= =========  = ===== ===== ===== ===== ======== ========== =========
NEW YORK STRIPE TEE              Memo: NB17C500
A7NP102  338 OLIVE  C    384   636   888   636    2544    3.500    8904.00

NY ROCK PIECED STRIPE TEE        Memo: NB17C506
A7NP202  115 ARCTIC C    384   636   888   636    2544    3.500    8904.00

ROCK & ROLL PIECED STRIPE TEE    Memo: NB17C510
A7NP302  039 H GREY C    384   636   888   636    2544    3.500    8904.00

UNITED HAWK SEEDSTITCH TEE       Memo: NB17C502
A7NT102  A9 BLACK S C    384   636   888   636    2544    3.250    8268.00

LION CROWN SEEDSTITCH TEE        Memo: NB17C503
A7NT202  115 ARCTIC C    384   636   888   636    2544    3.250    8268.00

N.E SNAKE SEEDSTITCH TEE         Memo: NB17C511
A7NT302  416 BLUE A C    384   636   888   636    2544    3.250    8268.00

SKULL & SNAKE HOODIE             Memo: NB17C505
A7NH134  217 DK BWN C    756  1260  1764  1260    5040    7.200   36288.00

575 MOTORCYCLE HOODIE            Memo: NB17C508
A7NH234  039 H GREY C    756  1260  1764  1260    5040    7.200   36288.00

                                                 --------         ----------
                          Current Totals          25344           124092.00
                          Additional Costs                             0.00
                          Quota Cost                                   0.00
                                                                 ==========
                          P.O. Total                             124092.00

** Special Instructions *****************************************
```

<<< continued on the next page >>>

Page: 2                    BLUE MARLIN CORP.                    P.O. #     997
                             299 KANSAS ST
                        SAN FRANCISCO, CA 94103

                        OVERSEAS PURCHASE ORDER #997

FACTORY:                                    SHIP TO:
MATRIX SOURCING                             BLUE MARLIN, INC.
NO. 10-11. BLOCK H-111                      990A BEECHER ST.
JOHAR TOWN .                                SAN LEANDRO, CA 64577

LAHORE,
PAKISTAN

---

| Order Date ETD Date  ETA Date  Carrier | Comment | Terms |
|---|---|---|
| 08/02/2006 12/26/2006 01/26/2006 OCEAN | NOBO3 RELP | CAA + 45 DAYS |

| Duty Category | Label | | Hang Tag | Packaging |
|---|---|---|---|---|
| | NOBO | | NOBO | SEE BELOW |

---

** Special Instructions *******************************************

1)TESTING WILL NEED TO COMPLY TO "WAL*MART STORES PHYSICAL TESTING PROGRAM FOR
APPAREL/ACCESSORIES/SOKS" AS DATE REVISED :SEPTEMBER 2004.
2)APPAREL PERFORMANCE SPECIFIACTIONS WILL NEED TO COMPLY TO CURRECT "WAL*MART
STORES APPAREL PERFORMANCE SPECIFICATIONS"
ALL GARMENTS AS PER WAL*MART GARMENT PERSENTATION ADULT'S TOP.
PACKING AS PER WAL*MART FLOOR READY APPAREL-PACKING REQUIRMENTS.
TEE HANGER W-491, 19" TOP HANGER.
JACKET W-529, 19" HEAVY WEIGHT TOP HANGER.
HANGTAG USE 3" BLACK SWIFT ATTACH UNDER WEARER'S LEFT ARM. HANGTAG BARCODE MUST
BE VISIBLE.
TOTAL 12PCS SINGLE STYLE AND SIZE IN ONE CARTON.TWO GARMENTS SAME STYLE AND
SIZE IN ONE POLYBAG AND HEAT-SEALED.THAN FOLD GARMENTS IN HALF BY BRINGING THE
BOTTOM HEM UP TO THE TOP OF HANGER.DO NOT USE RUBBER BANDS.
MASTER CARTON MARKING:PRINT ON ONE(1)LONGEST SIDE OF EACH MASTER SHIPPING
CARTON.ONLY ONE LONGEST SIDE.
SHIPPING DEVIATION +/- 1% PER STYLE AND SIZE ONLY.

**EXHIBIT B**

WAL-MART

# ETHICAL STANDARDS

| **Request Info** | | | | **Scheduling** | | | |
|---|---|---|---|---|---|---|---|
| Request Nbr | 131840 | Factory Id | 28062861 | Sched Date | 11/25/2006 GP Office | | |
| Importer of Rec | USA SUPPLIER | Supplier Id | 28055507 | Audit Firm | ITS | Primary Auditor | ITS |
| | | | | Actual Auditor | | Secondary Auditor | ITS |
| Retail Market | WAL-MART STORES INC. USA | Requestor Type | Supplier | | | | |
| Audit_type | INITIAL - NEW | Request Status | Audit Scheduled | | | | |

| **Supplier Details** | | | | **Future PO Count** | |
|---|---|---|---|---|---|
| Name | BLUE MARLIN CORP | Phone | | Supplier/Factory | 0 |
| Address | PO BOX 79 | Email | | Future Factory PO Count | 0 |
| City | MEMPHIS TN | Fax | | | |
| State/Prov | TN | Contact | | | |
| Country | UNITED STATES | | | | |

| **Factory Details English** | | **Factory Details Local Language** | |
|---|---|---|---|
| Name | EJAZ DYEING AND FINISHING MILLS | Name | EJAZ DYEING AND FINISHING MILLS |
| Address | 34/E, MAIN GULBERG III | Address | |
| City | LAHORE | City | |
| State/Prov | | State/Prov | |
| Country | PAKISTAN | Country | PAKISTAN |
| Phone | 92-42-111-699-699 | | |
| Fax | | | |
| Email | | | |
| Contact | | | |
| Importer of Record | USA SUPPLIER | | |

**Violations**

| | |
|---|---|
| SECTION | LABOR PRACTICE - BENEFITS |
| FAILURE TO PROVIDE LEGAL BENEFITS WITH NON-MONETARY VALUE | |
| Answer | YES |
| Pre Defined Comments | |
| Comments | 1. In accordance with Employees Old Age Benefits Act 1976 & Social Security Ordinance 1965 employer shall make contribution to such schemes for providing social benefits to its workers, and chapter-I of Employees Old Age Benefits Act 1976 section-1 point-(4)(i) wherein ten or more persons are employed by the employer directly or through any other person whether on |

WAL·MART
# ETHICAL STANDARDS



behalf of himself or any other person or were so employed on any day during the preceding twelve months.

It was noted during documents review that factory was providing Employees Old Age Benefits to 161 employees and Social Security to 89 employees out of 1150 employees.

To conform to local law and Wal-Mart Standards for Suppliers, the factory should provide Employees Old Age Benefits and Social Security to all its eligible employees.

2. In accordance with the Industrial & Commercial Employment (Standing Orders) Ordinance, section 10-B, (1) the employer shall have all the permanent workmen employed by him insured against [natural death and disability and] death and injury arising out of contingencies not covered by the Workmen's compensation Act, 1923 or the Employee's Social Security Ordinance.

It was noted during documents review and management interview that employees were not covered by group insurance policy.

To conform to local law and Wal-Mart Standards for Suppliers, the factory should provide group insurance to its eligible employees.

| SECTION | LABOR PRACTICE - BENEFITS |

FAILURE TO PROVIDE LEGAL BENEFITS WITH MONETARY VALUE

| Answer | YES |

Pre Defined Comments

|          | In accordance with Industrial & Commercial Employment (Standing Orders) Ordinance 1968 section 10-C payment of Bonus (1) Every employer making profit in any year shall pay [for that year within three months of the closing of] that year to the workmen who has been in his employment in that year for a continuous period of not less than ninety days a bonus. |
|----------|---|
| Comments | It was noted during documents review and management interview that factory had not paid profit bonus to its employees three months after the closure of last financial year which was closed in June 2006 on the ground that they did not make any profit. Factory failed to provide supporting documents submitted to income tax department for the verification of loss incurred during the year. |
|          | To conform to local law and Wal-Mart Standards for Suppliers, the factory should pay profit bonus to all its eligible employees within three months of closing of the financial year. |

| SECTION | LABOR PRACTICE - WAGES |

UNCLEAR WAGE SYSTEMS

| Answer | YES |

Pre Defined Comments

|          | In accordance with section 19 of the West Pakistan Minimum Wages for Unskilled Workers (Amendment) Ordinance 2001, forms of register & records (1) every employer shall maintain at the place of employment in respect of any industry for which the minimum rates of wages have been fixed under the ordinance a wage register in form I, and in accordance with Punjab |
|----------|---|
| Comments | |

WAL★MART

# ETHICAL STANDARDS



Factories Rules, Register for Adult Workers (Section 41) para 98 (2) A register of adult workers in respect of daily attendance of the workers shall be maintained in the prescribed form M, and the attendance shall be marked every day and para 114 (2) the overtime hours of work per day and per week of and the payment therefore to, shall be correctly entered in the register required to be maintained under this rule.

It was noted that minimum and overtime wage could not be verified for the employees of cutting and stitching department due to inconsistent records of Sunday/holiday work. Production records obtained from cutting and stitching department showed that employees had worked on one Sunday and one holiday in the month of November 2006 (i.e. 11/19 & 11/09), two Sundays in the month of October 2006 (i.e. 10/15 & 10/01) and one Sunday in the month of September 2006 (i.e. 09/24) which were not recorded in employees' time records.

To conform to local law and Wal-Mart Standards for Suppliers, the factory should maintain and provide accurate payment and time records of all its employees, consistent with the production records, for compliance verification.

| SECTION | LABOR PRACTICE - WAGES |
|---|---|

NO PAY SLIPS AND/OR PAY RECORDS WITHOUT WORKER'S SIGNATURE / THUMBPRINT

| Answer | YES |
|---|---|

Pre Defined Comments

In accordance with section 19 of the West Pakistan Minimum Wages for Unskilled Workers (Amendment) Ordinance 2001, forms of register & records (1) every employer shall maintain at the place of employment in respect of any industry for which the minimum rates of wages have been fixed under the ordinance a wage register in form I which include date of payment & Para (2) every employer shall issue to the employees employed in any industry in respect of which minimum wages have been fixed a wage slip in form II.

Comments

It was noted during employees' interview and documents review that wage slip had not been issued to contract (piece rate) employees and date of payment was also not mentioned on payroll records.

To conform to local law and Wal-Mart Standards for Suppliers, the factory should issue wage slip to its contract (piece rate) employees with details of payment and mention date of payment on payroll records.

| SECTION | LABOR PRACTICE - LABOR HOURS |
|---|---|

WORKING OFF THE CLOCK

| Answer | YES |
|---|---|

Pre Defined Comments

In accordance with Punjab Factories Rules, Register for Adult Workers (Section 41) para 98 (2)

Comments    A register of adult workers in respect of daily attendance of the workers shall be maintained in the prescribed form M, and the attendance shall be marked every day and para 114 (2) the

WAL+MART
# ETHICAL STANDARDS



overtime hours of work per day and per week of and the payment therefore to, shall be correctly
entered in the register required to be maintained under this rule.

It was noted that labor hours could not be verified for the employees of cutting and stitching
department due to inconsistent records of Sunday/holiday work. Production records obtained
from cutting and stitching department showed that employees had worked on one Sunday and
one holiday in the month of November 2006 (i.e. 11/19 & 11/09), two Sundays in the month of
October 2006 (i.e. 10/15 & 10/01) and one Sunday in the month of September 2006 (i.e. 09/24)
which were not recorded in employees' time records.

To conform to local law and Wal-Mart Standards for Suppliers, the factory should maintain and
provide accurate payment and time records of all its employees, consistent with the production
records, for compliance verification.

SECTION                     LABOR PRACTICE - LABOR HOURS

SEVENTH DAY REST VIOLATION

Answer                      YES

Pre Defined Comments

In accordance with the Factories Act 1934 Chapter IV Restriction on working hours of adult para
(35) weekly holiday, (1) no adult worker shall be allowed or required to work in a factory on a
Sunday unless (a) he had or will have a holiday for a whole day on one of the three days
immediately before or after that Sunday.

It was noted that weekly rest could not be verified for the employees of cutting and stitching
department due to inconsistent records of Sunday/holiday work. Production records obtained
Comments
from cutting and stitching department showed that employees had worked on one Sunday and
one holiday in the month of November 2006 (i.e. 11/19 & 11/09), two Sundays in the month of
October 2006 (i.e. 10/15 & 10/01) and one Sunday in the month of September 2006 (i.e. 09/24)
which were not recorded in employees' time records.

To conform to local law and Wal-Mart Standards for Suppliers, the factory should maintain and
provide accurate payment and time records of all its employees, consistent with the production
records, for compliance verification.

SECTION                     LABOR PRACTICE - EMPLOYMENT PRACTICES

INCOMPLETE / EXPIRED AND/OR MISSING WORKERS' CONTRACTS

Answer                      YES

Pre Defined Comments

In accordance with Industrial & Commercial Employment (Standing Order) Ordinance 1968
section 2-A, terms and conditions of service to be given in writing to workman at the time of his
Comments                    appointment.

It was noted during employees' interview that appointment letter was not issued to employees

WAL-MART

# ETHICAL STANDARDS



|  | although a copy of appointment letter was maintained in personnel files. |
|---|---|
|  | To conform to local law and Wal-Mart Standards for Suppliers, the factory should issue |
|  | appointment letter with terms and conditions of service to all its employees. |
| SECTION | HEALTH & SAFETY - FIRE SAFETY MANAGEMENT |

INACCESSIBLE FIRE SAFETY EQUIPMENT AND/OR FIRE EXIT / FIRE SAFETY EQUIPMENT ARE NOT FREE OF
OBSTRUCTION AND ACCESSIBLE

| Answer | YES |
|---|---|
| Pre Defined Comments | |
|  | In accordance with the Factories Act 1934 Chapter III Health & Safety Section 25 Precautions in |
|  | case of fire Para (8) the means of escape to be provided in case of fire and the nature and amount |
|  | of fire fighting apparatus to be provided and maintained. |
| Comments | |
|  | It was noted during factory tour that seven fire extinguishers were found blocked by fabric and |
|  | table in stitching and checking area. |
|  | To conform to local law and Wal-Mart Standards for Suppliers, the factory should ensure that |
|  | access to fire extinguishers is clear and unobstructed. |
| SECTION | HEALTH & SAFETY - FIRE SAFETY MANAGEMENT |

INADEQUATE EVACUATION PLAN POSTED OR MARKED ON FLOOR AND/OR DISPLAYED ON WALL

| Answer | YES |
|---|---|
| Pre Defined Comments | 1 Wal-Mart Standards: Factories shall provide adequate medical facilities and ensure that all production and manufacturing processes are carried out in conditions that have proper and adequate regard for health and safety of those involved. Wal-Mart will not do business with any supplier that provides an unhealthy or hazardous work environment or utilize mental or physical disciplinary practices. |
|  | No applicable local Law. |
| Comments | It was noted during factory tour that evacuation plan was not posted in dyeing finishing department. |
|  | To conform to Wal-Mart Standards for Suppliers, the factory should post evacuation plan in dyeing finishing department. |
| SECTION | HEALTH & SAFETY - FIRE SAFETY MANAGEMENT |

INADEQUATE NUMBER OF EXIT ROUTES OR EXITS

| Answer | YES |
|---|---|
| Pre Defined Comments | |
| Comments | In accordance with Punjab Factories Rules precautions against fire every building of more than one storey shall be provided at least two sets of stairs or steps. |
|  | It was noted during factory tour that first floor laboratory and printing area had only one set of |

# WAL*MART
# ETHICAL STANDARDS



|  | stairs. |
| --- | --- |
|  | To conform to local law and Wal-Mart Standards for Suppliers, the factory should arrange |
|  | emergency set of stairs for laboratory and printing area on first floor. |
| SECTION | HEALTH & SAFETY - FIRE SAFETY MANAGEMENT |
| PARTIALLY BLOCKED EXIT, ROUTES, AISLES AND STAIRWELLS | |
| Answer | YES |
| Pre Defined Comments | |
|  | In accordance with the Factories Act 1934 Chapter III Health & Safety, Section 25 Precautions |
|  | in case of fire (6) a free passage way giving access to each means of escape in case of fire shall |
|  | be maintained for the use of all workers in every room of the factory. |
| Comments | It was noted during factory tour that passages between work area, leading to emergency exit, |
|  | were blocked by sacs of fabric and tables in stitching and finishing department. |
|  | To conform to local law and Wal-Mart Standards for Suppliers, the factory should ensure that |
|  | passages leading to emergency exit are kept clear and unobstructed during working hours. |
| SECTION | HEALTH & SAFETY - ELECTRICAL SAFETY |
| BARE WIRING, POOR INSULATION OR OPEN ELECTRICAL CONNECTIONS | |
| Answer | YES |
| Pre Defined Comments | |
|  | In accordance with Punjab Factories Rules 1978, Fencing section 26, 31 and 33-J Para 61 (1) in |
|  | every factory, all electrical circuits or part of such circuits or any object electrically connected |
|  | with them whether commonly or occasionally in an electrified condition, which by reason of |
|  | their position could cause injury to any person, shall be protected adequately, either by |
| Comments | non-metallic fencing or insulation or by both, in such manner as to remove danger of injury. |
|  | It was noted during factory tour that three fans were connected to main electric supply with bare |
|  | wires in stitching unit-1 and finishing unit-3. |
|  | To conform to local law and Wal-Mart Standards for Suppliers, the factory should connect all |
|  | electric items to main electric supply with proper plugs. |
| SECTION | HEALTH & SAFETY - CHEMICAL SAFETY |
| MATERIAL SAFETY DATA SHEET (MSDS) NOT AVAILABLE FOR CHEMICALS | |
| Answer | YES |
|  | 1 Wal-Mart Standards: Factories shall provide adequate medical facilities and ensure that all |
|  | production and manufacturing processes are carried out in conditions that have proper and |
| Pre Defined Comments | adequate regard for health and safety of those involved. Wal-Mart will not do business with any |
|  | supplier that provides an unhealthy or hazardous work environment or utilize mental or physical |
|  | disciplinary practices. |
| Comments | No applicable local Law. |

WAL-MART

# ETHICAL STANDARDS



|  | It was noted during factory tour that Material Safety Data Sheet (MSDS) was not posted for chemicals used in the factory. |
|  | To conform to Wal-Mart Standards for Suppliers, the factory should post MSDS for all chemicals used in the factory in local language. |
| SECTION | HEALTH & SAFETY - SANITATION |

CLEAN WATER BASIN IS NOT PROVIDED WITH SOAP AND RUNNING WATER

| Answer | YES |
|--------|-----|
| Pre Defined Comments | |
| Comments | In accordance with Punjab Factories Rules 1978 Provision of washing accommodation & latrine and urinals, Section 21 Para - 42 A (1) the factory should provide one wash basin for every twenty workers. |
|  | It was noted during factory tour that only 32 wash basins were provided for 850 male employees. To conform to local law and Wal-Mart Standards for Suppliers, the factory should provide more wash basins for its male employees in the ratio of one for every twenty employees. |
| SECTION | HEALTH & SAFETY - EQUIPMENT SAFETY |

EQUIPMENT WITH PINCH POINTS, ROTATING PARTS, CUTTING AREAS OR OTHER DANGEROUS PARTS NOT FITTED WITH GUARDS OR OTHER PROTECTIVE DEVICES

| Answer | YES |
|--------|-----|
| Pre Defined Comments | |
| Comments | In accordance with the Factories Act 1934, Chapter III, Health & Safety, Section 31, Casing of New Machinery (1) in all machinery driven by power and installed in any factory after the commencement of the Labour Laws (Amendment) Ordinance 1972 (a) every set screw, belt or key on any revolving shaft, spindle, wheel or pinion shall be so sunk, encased or otherwise effectively guarded as to prevent danger. |
|  | It was noted during factory tour that 10 out of 149 overlock machines were without needle/eye guard and one tape cutter machine was without pulley guard. |
|  | To conform to local law and Wal-Mart Standards for Suppliers, the factory should provide needle guards in overlock sewing machines and pulley guard on tape cutter machine. |
| SECTION | HEALTH & SAFETY - PERSONAL PROTECTIVE EQUIPMENT (PPE) |

NO RESPIRATORY PROTECTION AVAILABLE FOR OPERATIONS THAT EMIT DUSTS, MISTS, VAPORS OR FUMES

| Answer | YES |
|--------|-----|
| Pre Defined Comments | 1 Wal-Mart Standards: Factories shall provide adequate medical facilities and ensure that all production and manufacturing processes are carried out in conditions that have proper and adequate regard for health and safety of those involved. Wal-Mart will not do business with any supplier that provides an unhealthy or hazardous work environment or utilize mental or physical disciplinary practices. |

WAL*MART
# ETHICAL STANDARDS



|  | No applicable local Law. |
|---|---|
| Comments | It was noted during factory tour that overlock sewing machine operators, with lot of cut debris, were working without face mask. |
|  | To conform to Wal-Mart Standards for Suppliers, the factory should provide face mask to overlock machine operators and train the employees in the use of PPE and its necessity. |
| SECTION | HEALTH & SAFETY - ACCIDENT/MEDICAL PROGRAM/FIRST AID |

FIRST AID EQUIPMENT NOT AVAILABLE, INADEQUATE AND/OR INACCESSIBLE

| Answer | YES |
|---|---|
| Pre Defined Comments |  |
|  | In accordance with Punjab Factories Rules 1978 Appendix I Rule [94] (1) factory to maintain first aid box containing items as described in Punjab Factories Rules 1978 Appendix I which include sterilized dressings, sterilized burn dressings and supply of adhesive plaster. |
| Comments | It was noted during factory tour that first aid kits in production areas were without sterilized burn dressing and adhesive plaster, and first aid kits in stitching unit-5 and finishing unit-3 were found empty. |
|  | To conform to local law and Wal-Mart Standards for Suppliers, the factory should keep first aid kits in production areas with all essential items as per Punjab Factories Rules 1978, Appendix I, which includes among others sterilized burn dressing and adhesive plaster. |
| SECTION | ENVIRONMENT - WASTEWATER TREATMENT/DISCHARGE |

UNTREATED SANITARY WASTEWATER DISCHARGED OTHER THAN TO SEWER OR SEPTIC SYSTEM

| Answer | YES |
|---|---|
| Pre Defined Comments |  |
|  | In accordance with the Pakistan Environmental Protection Act 1997 section 11, prohibition of certain discharges or emission no person shall discharge or emit or allow the discharge or emission of any effluent or waste or air pollutant or noise in an amount concentration or level which is in excess of the National Environmental Quality Standards (NEQS). |
| Comments | It was noted that factory was discharging its effluent of dyeing and washing sections directly into general drain without any treatment. |
|  | To conform to local law and Wal-Mart Standards for Suppliers, the factory should comply with the requirements of the Environmental Protection Act and take measures to keep level of its effluent from dyeing and washing section within NEQS limits. |

## Audit Level Comments

Comments

Overall Findings

In view of the findings raised, non-compliances were covered in the areas of Labor Practice - Benefits, Labor Practice -

WAL*MART
# ETHICAL STANDARDS



Wages, Labor Practice - Labor Hours, Labor Practice - Employment Practices, Health & Safety - Fire Safety Management, Health & Safety - Electrical Safety, Health & Safety - Chemical Safety, Health & Safety - Sanitation, Health & Safety - Equipment Safety, Health & Safety - Personal Protective Equipment (PPE), Health & Safety - Accidental/Medical Program/First Aid, and Environment - Waste Water Treatment/Discharge. Details of the findings are listed in the following sections. For other areas, no violation was noted.

Best Practices Observed

Nil

Monitors Note

Nil

Communicated Findings With

Mr. Lt. Col. (R) Khalid Mansur - Manager P & A & System Management

Receptivity of Supplier and Manufacturer

The factory management showed a positive attitude to this audit during the whole process. Locked areas encountered during the audit were unlocked timely. At the end of the audit, all the findings were accepted by the factory management

**EXHIBIT  C**

WAL+MART

# **ETHICAL STANDARDS**



| Request Info | | | | Scheduling | | | |
|---|---|---|---|---|---|---|---|
| Request Nbr | 139597 | Factory Id | 28062861 | Sched Date | 4/4/2007 GP Office | | |
| | | | | Audit Firm | ITS | Primary Auditor | ITS |
| Importer of Rec | USA SUPPLIER | Supplier Id | 28055507 | Actual Auditor | | Secondary Auditor | ITS |
| Retail Market | WAL-MART STORES INC. USA | Requestor Type | System | | | | |
| Audit type | UNANNOUNCED | Request Status | Audit Date Confirmed by 3rd Party | | | | |

| Supplier Details | | | Future PO Count | |
|---|---|---|---|---|
| Name | BLUE MARLIN CORP | Phone | Supplier/Factory | 0 |
| Address | PO BOX 79 | Email | Future Factory PO Count 0 | |
| City | MEMPHIS TN | Fax | | |
| State/Prov | TN | Contact | | |
| Country | UNITED STATES | | | |

| Factory Details | | Factory Details | |
|---|---|---|---|
| **English** | | **Local Language** | |
| Name | EJAZ DYEING AND FINISHING MILLS | Name | EJAZ DYEING AND FINISHING MILLS |
| Address | 34/E, MAIN GULBERG III | Address | |
| City | LAHORE | City | |
| State/Prov | | State/Prov | |
| Country | PAKISTAN | Country | PAKISTAN |
| Phone | 92-42-111-699-699 | | |
| Fax | | | |
| Email | | | |
| Contact | | | |
| Importer of Record | USA SUPPLIER | | |

| Violations | |
|---|---|
| SECTION | LABOR PRACTICE - BENEFITS |
| FAILURE TO PROVIDE LEGAL BENEFITS WITH NON-MONETARY VALUE | |
| Answer | YES |
| Pre Defined Comments | |
| Comments | Initial Audit (November 25th, 2006) 1. In accordance with Employees Old Age Benefits Act 1976 & Social Security Ordinance 1965 |

WAL-MART
# ETHICAL STANDARDS



employer shall make contribution to such schemes for providing social benefits to its workers, and chapter-l of Employees Old Age Benefits Act 1976 section-1 point-(4)(i) wherein ten or more persons are employed by the employer directly or through any other person whether on behalf of himself or any other person or were so employed on any day during the preceding twelve months.

It was noted during documents review that factory was providing Employees Old Age Benefits to 161 employees and Social Security to 89 employees out of 1150 employees.
To conform to local law and Wal-Mart Standards for Suppliers, the factory should provide Employees Old Age Benefits and Social Security to all its eligible employees.

2. In accordance with the Industrial & Commercial Employment (Standing Orders) Ordinance, section 10-B, (1) the employer shall have all the permanent workmen employed by him insured against [natural death and disability and] death and injury arising out of contingencies not covered by the Workmen's compensation Act, 1923 or the Employee's Social Security Ordinance.

It was noted during documents review and management interview that employees were not covered by group insurance policy.

To conform to local law and Wal-Mart Standards for Suppliers, the factory should provide group insurance to its eligible employees

First Follow-up Audit (April 4th, 2007)
It was noted during the follow-up audit that factory was providing Social Security benefits to all eligible employees.

However, factory still have to take corrective actions on the following:

1. In accordance with Employees Old Age Benefits Act 1976, employer shall make contribution to such schemes for providing social benefits to its workers, and chapter-l of Employees Old Age Benefits Act 1976 section-1 point-(4)(i) wherein ten or more persons are employed by the employer directly or through any other person whether on behalf of himself or any other person or were so employed on any day during the preceding twelve months.

It was noted during documents review that factory was providing Employees Old Age Benefits to 333 out of 450 employees.

To conform to local law and Wal-Mart Standards for Suppliers, the factory should provide Employees Old Age Benefits to all its eligible employees.

2. In accordance with the Industrial & Commercial Employment (Standing Orders) Ordinance, section 10-B, (1) the employer shall have all the permanent workmen employed by him insured against [natural death and disability and] death and injury arising out of contingencies not covered by the Workmen's compensation Act, 1923 or the Employee's Social Security Ordinance.

WAL★MART

# **ETHICAL STANDARDS**



|  | It was noted during documents review and management interview that employees were not |
|---|---|
|  | covered by group insurance policy. |
|  | To conform to local law and Wal-Mart Standards for Suppliers, the factory should provide group |
|  | insurance to its eligible employees. |
| SECTION | LABOR PRACTICE - BENEFITS |

FAILURE TO PROVIDE LEGAL BENEFITS WITH MONETARY VALUE

| Answer | YES |
|---|---|

Pre Defined Comments

|  | Initial Audit (November 25th, 2006) |
|---|---|
|  | In accordance with Industrial & Commercial Employment (Standing Orders) Ordinance 1968 |
|  | section 10-C payment of Bonus (1) Every employer making profit in any year shall pay [for that |
|  | year within three months of the closing of] that year to the workmen who has been in his |
|  | employment in that year for a continuous period of not less than ninety days a bonus. |
|  | It was noted during documents review and management interview that factory had not paid profit |
|  | bonus to its employees three months after the closure of last financial year which was closed in |
|  | June 2006 on the ground that they did not make any profit. Factory failed to provide supporting |
|  | documents submitted to income tax department for the verification of loss incurred during the |
|  | year. |
|  | To conform to local law and Wal-Mart Standards for Suppliers, the factory should pay profit |
|  | bonus to all its eligible employees within three months of closing of the financial year. |
| Comments | First Follow-up Audit (April 4th, 2007) |
|  | The factory has not taken corrective action. |
|  |  |
|  | In accordance with Industrial & Commercial Employment (Standing Orders) Ordinance 1968 |
|  | section 10-C payment of Bonus (1) Every employer making profit in any year shall pay [for that |
|  | year within three months of the closing of] that year to the workmen who has been in his |
|  | employment in that year for a continuous period of not less than ninety days a bonus. |
|  | It was noted during documents review and management interview that factory had not paid profit |
|  | bonus to its employees three months after the closure of last financial year which was closed in |
|  | June 2006 on the ground that they did not make any profit. Factory failed to provide supporting |
|  | documents submitted to income tax department for the verification of loss incurred during the |
|  | year. |
|  | To conform to local law and Wal-Mart Standards for Suppliers, the factory should pay profit |
|  | bonus to all its eligible employees within three months of closing of the financial year. |
| SECTION | LABOR PRACTICE - WAGES |

UNCLEAR WAGE SYSTEMS

| Answer | YES |
|---|---|

Pre Defined Comments

WAL*MART

# ETHICAL STANDARDS



|  | Initial Audit (November 25th, 2006) |
|  | In accordance with section 19 of the West Pakistan Minimum Wages for Unskilled Workers (Amendment) Ordinance 2001, forms of register & records (1) every employer shall maintain at the place of employment in respect of any industry for which the minimum rates of wages have been fixed under the ordinance a wage register in form I, and in accordance with Punjab Factories Rules, Register for Adult Workers (Section 41) para 98 (2) A register of adult workers in respect of daily attendance of the workers shall be maintained in the prescribed form M, and the attendance shall be marked every day and para 114 (2) the overtime hours of work per day and per week of and the payment therefore to, shall be correctly entered in the register required to be maintained under this rule. In accordance with Finance Bill 2006, the Government in this year Budget also made an amendment increasing the Minimum Wages for Unskilled Workers from Rs. 3000 to Rs. 4000. |
|  | It was noted that minimum and overtime wage could not be verified for the employees of cutting and stitching department due to inconsistent records of Sunday/holiday work. Production records obtained from cutting and stitching department showed that employees had worked on one Sunday and one holiday in the month of November 2006 (i.e. 11/19 & 11/09), two Sundays in the month of October 2006 (i.e. 10/15 & 10/01) and one Sunday in the month of September 2006 (i.e. 09/24) which were not recorded in employees' time records. |
|  | To conform to local law and Wal-Mart Standards for Suppliers, the factory should maintain and provide accurate payment and time records of all its employees, consistent with the production |
| Comments | records, for compliance verification. |
|  | First Follow-up Audit (April 4th, 2007) |
|  | The factory has not taken corrective action. |
|  | In accordance with section 19 of the West Pakistan Minimum Wages for Unskilled Workers (Amendment) Ordinance 2001, forms of register & records (1) every employer shall maintain at the place of employment in respect of any industry for which the minimum rates of wages have been fixed under the ordinance a wage register in form I, and in accordance with Punjab Factories Rules, Register for Adult Workers (Section 41) para 98 (2) A register of adult workers in respect of daily attendance of the workers shall be maintained in the prescribed form M, and the attendance shall be marked every day and para 114 (2) the overtime hours of work per day and per week of and the payment therefore to, shall be correctly entered in the register required to be maintained under this rule. In accordance with Finance Bill 2006, the Government in this year Budget also made an amendment increasing the Minimum Wages for Unskilled Workers from Rs. 3000 to Rs. 4000. |
|  | It was noted that minimum and overtime wage could not be verified for the employees of cutting and fabric checking department due to inconsistent records of Sunday/holiday work. Production records obtained from cutting department showed that 2 out of 25 selected samples had worked on one Sunday in the month of January 2007 (i.e. 01/28) whereas their time record reflected that no work was performed on this rest day. Similarly, fabric checking report showed that 2 out of |

WAL+MART

# ETHICAL STANDARDS



|  | 25 selected samples had worked on one holiday and one Sunday in the month of March 2007 (i.e. 03/23 & 03/25) which were not recorded in employees' time records. |
|---|---|
|  | To conform to local law and Wal-Mart Standards for Suppliers, the factory should maintain and provide accurate payment and time records of all its employees, consistent with the production records, for compliance verification. |
| SECTION | LABOR PRACTICE - WAGES |
| NO PAY SLIPS AND/OR PAY RECORDS WITHOUT WORKER'S SIGNATURE / THUMBPRINT | |
| Answer | NO |
| Pre Defined Comments | |
| Comments | Initial Audit (November 25th, 2006) |
|  | In accordance with section 19 of the West Pakistan Minimum Wages for Unskilled Workers (Amendment) Ordinance 2001, forms of register & records (1) every employer shall maintain at the place of employment in respect of any industry for which the minimum rates of wages have been fixed under the ordinance a wage register in form I which include date of payment & Para (2) every employer shall issue to the employees employed in any industry in respect of which minimum wages have been fixed a wage slip in form II. |
|  | It was noted during employees' interview and documents review that wage slip had not been issued to contract (piece rate) employees and date of payment was also not mentioned on payroll records. |
|  | To conform to local law and Wal-Mart Standards for Suppliers, the factory should issue wage slip to its contract (piece rate) employees with details of payment and mention date of payment on payroll records. |
|  | First Follow-up Audit (April 4th, 2007) |
|  | It was noted during the follow-up audit that factory had issued wage slip to all its employees and date of payment was also mentioned on payroll records. Factory does not employ contractual employees any more. |
| SECTION | LABOR PRACTICE - LABOR HOURS |
| WORKING OFF THE CLOCK | |
| Answer | YES |
| Pre Defined Comments | |
| Comments | Initial Audit (November 25th, 2006) |
|  | In accordance with section 19 of the West Pakistan Minimum Wages for Unskilled Workers (Amendment) Ordinance 2001, forms of register & records (1) every employer shall maintain at the place of employment in respect of any industry for which the minimum rates of wages have been fixed under the ordinance a wage register in form I, and in accordance with Punjab Factories Rules, Register for Adult Workers (Section 41) para 98 (2) A register of adult workers in respect of daily attendance of the workers shall be maintained in the prescribed form M, and the attendance shall be marked every day and para 114 (2) the overtime hours of work per day |

WAL-MART

# ETHICAL STANDARDS



and per week of and the payment therefore to, shall be correctly entered in the register required to be maintained under this rule. In accordance with Punjab Factories, no worker shall be employed in any factory for more than sixty hours in any week.

It was noted that labor hours could not be verified for the employees of cutting and stitching department due to inconsistent records of Sunday/holiday work. Production records obtained from cutting and stitching department showed that employees had worked on one Sunday and one holiday in the month of November 2006 (i.e. 11/19 & 11/09), two Sundays in the month of October 2006 (i.e. 10/15 & 10/01) and one Sunday in the month of September 2006 (i.e. 09/24) which were not recorded in employees' time records.

To conform to local law and Wal-Mart Standards for Suppliers, the factory should maintain and provide accurate payment and time records of all its employees, consistent with the production records, for compliance verification.

First Follow-up Audit (April 4th, 2007)
The factory has not taken corrective action.

In accordance with section 19 of the West Pakistan Minimum Wages for Unskilled Workers (Amendment) Ordinance 2001, forms of register & records (1) every employer shall maintain at the place of employment in respect of any industry for which the minimum rates of wages have been fixed under the ordinance a wage register in form I, and in accordance with Punjab Factories Rules, Register for Adult Workers (Section 41) para 98 (2) A register of adult workers in respect of daily attendance of the workers shall be maintained in the prescribed form M, and the attendance shall be marked every day and para 114 (2) the overtime hours of work per day and per week of and the payment therefore to, shall be correctly entered in the register required to be maintained under this rule. In accordance with Punjab Factories, no worker shall be employed in any factory for more than sixty hours in any week.

It was noted that labor hours could not be verified for the employees of cutting and fabric checking department due to inconsistent records of Sunday/holiday work. Production records obtained from cutting department showed that 2 out of 25 selected samples had worked on one Sunday in the month of January 2007 (i.e. 01/28) whereas their time record reflected that no work was performed on this rest day. Similarly, fabric checking report showed that 2 out of 25 selected samples had worked on one holiday and one Sunday in the month of March 2007 (i.e. 03/23 & 03/25) which were not recorded in employees' time records.

To conform to local law and Wal-Mart Standards for Suppliers, the factory should maintain and provide accurate payment and time records of all its employees, consistent with the production records, for compliance verification.

SECTION                    LABOR PRACTICE - LABOR HOURS

SEVENTH DAY REST VIOLATION

Answer                     YES

Pre Defined Comments

WAL+MART
# ETHICAL STANDARDS



Initial Audit (November 25th, 2006)

In accordance with section 19 of the West Pakistan Minimum Wages for Unskilled Workers (Amendment) Ordinance 2001, forms of register & records (1) every employer shall maintain at the place of employment in respect of any industry for which the minimum rates of wages have been fixed under the ordinance a wage register in form I, and in accordance with Punjab Factories Rules, Register for Adult Workers (Section 41) para 98 (2) A register of adult workers in respect of daily attendance of the workers shall be maintained in the prescribed form M, and the attendance shall be marked every day and para 114 (2) the overtime hours of work per day and per week of and the payment therefore to, shall be correctly entered in the register required to be maintained under this rule. In accordance with the Factories Act 1934 Chapter IV Restriction on working hours of adult para (35) weekly holiday, (1) no adult worker shall be allowed or required to work in a factory on a Sunday unless (a) he had or will have a holiday for a whole day on one of the three days immediately before or after that Sunday.

It was noted that weekly rest day could not be verified for the employees of cutting and stitching department due to inconsistent records of Sunday/holiday work. Production records obtained from cutting and stitching department showed that employees had worked on one Sunday and one holiday in the month of November 2006 (i.e. 11/19 & 11/09), two Sundays in the month of October 2006 (i.e. 10/15 & 10/01) and one Sunday in the month of September 2006 (i.e. 09/24) which were not recorded in employees' time records.

To conform to local law and Wal-Mart Standards for Suppliers, the factory should maintain and provide accurate payment and time records of all its employees, consistent with the production records, for compliance verification.

Comments

First Follow-up Audit (April 4th, 2007)

The factory has not taken corrective action.

In accordance with section 19 of the West Pakistan Minimum Wages for Unskilled Workers (Amendment) Ordinance 2001, forms of register & records (1) every employer shall maintain at the place of employment in respect of any industry for which the minimum rates of wages have been fixed under the ordinance a wage register in form I, and in accordance with Punjab Factories Rules, Register for Adult Workers (Section 41) para 98 (2) A register of adult workers in respect of daily attendance of the workers shall be maintained in the prescribed form M, and the attendance shall be marked every day and para 114 (2) the overtime hours of work per day and per week of and the payment therefore to, shall be correctly entered in the register required to be maintained under this rule. In accordance with the Factories Act 1934 Chapter IV Restriction on working hours of adult para (35) weekly holiday, (1) no adult worker shall be allowed or required to work in a factory on a Sunday unless (a) he had or will have a holiday for a whole day on one of the three days immediately before or after that Sunday.

It was noted that weekly rest day could not be verified for the employees of cutting and fabric checking department due to inconsistent records of Sunday/holiday work. Production records obtained from cutting department showed that 2 out of 25 selected samples had worked on one

WAL-MART

# ETHICAL STANDARDS



|  | Sunday in the month of January 2007 (i.e. 01/28) whereas their time record reflected that no work was performed on this rest day. Similarly, fabric checking report showed that 2 out of 25 selected samples had worked on one holiday and one Sunday in the month of March 2007 (i.e. 03/23 & 03/25) which were not recorded in employees' time records. To conform to local law and Wal-Mart Standards for Suppliers, the factory should maintain and provide accurate payment and time records of all its employees, consistent with the production records, for compliance verification. |
|---|---|
| SECTION | LABOR PRACTICE - EMPLOYMENT PRACTICES |

INCOMPLETE / EXPIRED AND/OR MISSING WORKERS' CONTRACTS

| Answer | YES |
|---|---|
| Pre Defined Comments | |
| | Initial Audit (November 25th, 2006)<br>In accordance with Industrial & Commercial Employment (Standing Order) Ordinance 1968 section 2-A, terms and conditions of service to be given in writing to workman at the time of his appointment.<br>It was noted during employees' interview that appointment letter was not issued to employees although a copy of appointment letter was maintained in personnel files.<br>To conform to local law and Wal-Mart Standards for Suppliers, the factory should issue appointment letter with terms and conditions of service to all its employees. |
| Comments | First Follow-up Audit (April 4th, 2007)<br>The factory has not taken corrective action.<br><br>In accordance with Industrial & Commercial Employment (Standing Order) Ordinance 1968 section 2-A, terms and conditions of service to be given in writing to workman at the time of his appointment.<br>It was noted during employees' interview that appointment letter was not issued to employees although a copy of appointment letter was maintained in personnel files.<br>To conform to local law and Wal-Mart Standards for Suppliers, the factory should issue appointment letter with terms and conditions of service to all its employees. |
| SECTION | HEALTH & SAFETY - FIRE SAFETY MANAGEMENT |

INACCESSIBLE FIRE SAFETY EQUIPMENT AND/OR FIRE EXIT / FIRE SAFETY EQUIPMENT ARE NOT FREE OF OBSTRUCTION AND ACCESSIBLE

| Answer | YES |
|---|---|
| Pre Defined Comments | |
| Comments | Initial Audit (November 25th, 2006)<br>In accordance with the Factories Act 1934 Chapter III Health & Safety Section 25 Precautions in case of fire Para (8) the means of escape to be provided in case of fire and the nature and amount of fire fighting apparatus to be provided and maintained. |

WAL·MART

# **ETHICAL STANDARDS**



It was noted during factory tour that seven fire extinguishers were found blocked by fabric and table in stitching and checking area.

To conform to local law and Wal-Mart Standards for Suppliers, the factory should ensure that access to fire extinguishers is clear and unobstructed.

First Follow-up Audit (April 4th, 2007)

The factory has not taken corrective action.

In accordance with the Factories Act 1934 Chapter III Health & Safety Section 25 Precautions in case of fire Para (8) the means of escape to be provided in case of fire and the nature and amount of fire fighting apparatus to be provided and maintained.

It was noted during factory tour that five fire extinguishers were found blocked by fixed tables and cartons in stitching, finishing and sample room.

To conform to local law and Wal-Mart Standards for Suppliers, the factory should ensure that access to fire extinguishers is clear and unobstructed.

| SECTION | HEALTH & SAFETY - FIRE SAFETY MANAGEMENT |
|---|---|

INADEQUATE EVACUATION PLAN POSTED OR MARKED ON FLOOR AND/OR DISPLAYED ON WALL

| Answer | NO |
|---|---|
| Pre Defined Comments | 1 Wal-Mart Standards: Factories shall provide adequate medical facilities and ensure that all production and manufacturing processes are carried out in conditions that have proper and adequate regard for health and safety of those involved. Wal-Mart will not do business with any supplier that provides an unhealthy or hazardous work environment or utilize mental or physical disciplinary practices. |
| Comments | Initial Audit (November 25th, 2006) No applicable local Law. It was noted during factory tour that evacuation plan was not posted in dyeing finishing department. To conform to Wal-Mart Standards for Suppliers, the factory should post evacuation plan in dyeing finishing department. First Follow-up Audit (April 4th, 2007) It was noted during the follow-up audit that factory has posted evacuation plan in dyeing finishing department. |
| SECTION | HEALTH & SAFETY - FIRE SAFETY MANAGEMENT |

INADEQUATE NUMBER OF EXIT ROUTES OR EXITS

| Answer | YES |
|---|---|
| Pre Defined Comments | |
| Comments | Initial Audit (November 25th, 2006) In accordance with Punjab Factories Rules precautions against fire every building of more than |

WAL·MART

# ETHICAL STANDARDS



one storey shall be provided at least two sets of stairs or steps.

It was noted during factory tour that first floor laboratory and printing area had only one set of stairs.

To conform to local law and Wal-Mart Standards for Suppliers, the factory should arrange emergency set of stairs for laboratory and printing area on first floor.

First Follow-up Audit (April 4th, 2007)

The factory has not taken corrective action.

In accordance with Punjab Factories Rules precautions against fire every building of more than one storey shall be provided at least two sets of stairs or steps.

It was noted during factory tour that first floor laboratory and printing area had only one set of stairs.

To conform to local law and Wal-Mart Standards for Suppliers, the factory should arrange emergency set of stairs for laboratory and printing area on first floor.

| | |
|---|---|
| SECTION | HEALTH & SAFETY - FIRE SAFETY MANAGEMENT |

PARTIALLY BLOCKED EXIT, ROUTES, AISLES AND STAIRWELLS

| | |
|---|---|
| Answer | YES |
| Pre Defined Comments | |

Initial Audit (November 25th, 2006)

In accordance with the Factories Act 1934 Chapter III Health & Safety, Section 25 Precautions in case of fire (6) a free passage way giving access to each means of escape in case of fire shall be maintained for the use of all workers in every room of the factory.

It was noted during factory tour that passages between work area, leading to emergency exit, were blocked by sacs of fabric and tables in stitching and finishing department.

To conform to local law and Wal-Mart Standards for Suppliers, the factory should ensure that passages leading to emergency exit are kept clear and unobstructed during working hours.

| | |
|---|---|
| Comments | First Follow-up Audit (April 4th, 2007) |

The factory has not taken corrective action.

In accordance with the Factories Act 1934 Chapter III Health & Safety, Section 25 Precautions in case of fire (6) a free passage way giving access to each means of escape in case of fire shall be maintained for the use of all workers in every room of the factory.

It was noted during factory tour that passages between work area, leading to emergency exit, were blocked by sacs of fabric in stitching department.

To conform to local law and Wal-Mart Standards for Suppliers, the factory should ensure that passages leading to emergency exit are kept clear and unobstructed during working hours.

| | |
|---|---|
| SECTION | HEALTH & SAFETY - ELECTRICAL SAFETY |

BARE WIRING, POOR INSULATION OR OPEN ELECTRICAL CONNECTIONS

WAL·MART

# ETHICAL STANDARDS



| | |
|---|---|
| Answer | NO |
| Pre Defined Comments | |
| Comments | Initial Audit (November 25th, 2006) |
| | In accordance with Punjab Factories Rules 1978, Fencing section 26, 31 and 33-J Para 61 (1) in every factory, all electrical circuits or part of such circuits or any object electrically connected with them whether commonly or occasionally in an electrified condition, which by reason of their position could cause injury to any person, shall be protected adequately, either by non-metallic fencing or insulation or by both, in such manner as to remove danger of injury. |
| | It was noted during factory tour that three fans were connected to main electric supply with bare wires in stitching unit-1 and finishing unit-3. |
| | To conform to local law and Wal-Mart Standards for Suppliers, the factory should connect all electric items to main electric supply with proper plugs. |
| | |
| | First Follow-up Audit (April 4th, 2007) |
| | It was noted during the follow-up audit that all electric items were connected to main electric supply with proper plugs. |
| SECTION | HEALTH & SAFETY - CHEMICAL SAFETY |

MATERIAL SAFETY DATA SHEET (MSDS) NOT AVAILABLE FOR CHEMICALS

| | |
|---|---|
| Answer | YES |
| Pre Defined Comments | 1 Wal-Mart Standards: Factories shall provide adequate medical facilities and ensure that all production and manufacturing processes are carried out in conditions that have proper and adequate regard for health and safety of those involved. Wal-Mart will not do business with any supplier that provides an unhealthy or hazardous work environment or utilize mental or physical disciplinary practices. |
| Comments | Initial Audit (November 25th, 2006) |
| | No applicable local Law. |
| | It was noted during factory tour that Material Safety Data Sheet (MSDS) was not posted for chemicals used in the factory. |
| | To conform to Wal-Mart Standards for Suppliers, the factory should post MSDS for all chemicals used in the factory in local language. |
| | |
| | First Follow-up Audit (April 4th, 2007) |
| | The factory has taken corrective action partially. |
| | |
| | No applicable local Law. |
| | It was noted during factory tour that Material Safety Data Sheet (MSDS) was not posted for chemical used in finishing area. However, MSDS for chemicals used in dyeing department were posted. |
| | To conform to Wal-Mart Standards for Suppliers, the factory should post MSDS for all chemical used in finishing area in local language. |

WAL-MART
# ETHICAL STANDARDS



| | |
|---|---|
| SECTION | HEALTH & SAFETY - SANITATION |

CLEAN WATER BASIN IS NOT PROVIDED WITH SOAP AND RUNNING WATER

| | |
|---|---|
| Answer | NO |
| Pre Defined Comments | |
| | Initial Audit (November 25th, 2006) |
| | In accordance with Punjab Factories Rules 1978 Provision of washing accommodation & latrine and urinals, Section 21 Para - 42 A (1) the factory should provide one wash basin for every twenty workers. |
| | It was noted during factory tour that only 32 wash basins were provided for 850 male employees. |
| Comments | To conform to local law and Wal-Mart Standards for Suppliers, the factory should provide more wash basins for its male employees in the ratio of one for every twenty employees. |
| | First Follow-up Audit (April 4th, 2007) |
| | It was noted during the follow-up audit that factory has reduced its employees strength and the number of wash basins is now sufficient for the work force operating at the facility. |
| SECTION | HEALTH & SAFETY - EQUIPMENT SAFETY |

EQUIPMENT WITH PINCH POINTS, ROTATING PARTS, CUTTING AREAS OR OTHER DANGEROUS PARTS NOT
FITTED WITH GUARDS OR OTHER PROTECTIVE DEVICES

| | |
|---|---|
| Answer | YES |
| Pre Defined Comments | |
| | Initial Audit (November 25th, 2006) |
| | In accordance with the Factories Act 1934, Chapter III, Health & Safety, Section 31, Casing of New Machinery (1) in all machinery driven by power and installed in any factory after the commencement of the Labour Laws (Amendment) Ordinance 1972 (a) every set screw, belt or key on any revolving shaft, spindle, wheel or pinion shall be so sunk, encased or otherwise effectively guarded as to prevent danger. |
| | It was noted during factory tour that 10 out of 149 overlock machines were without needle/eye guard and one tape cutter machine was without pulley guard. |
| Comments | To conform to local law and Wal-Mart Standards for Suppliers, the factory should provide needle guards in overlock sewing machines and pulley guard on tape cutter machine. |
| | First Follow-up Audit (April 4th, 2007) |
| | The factory has not taken corrective action. |
| | In accordance with the Factories Act 1934, Chapter III, Health & Safety, Section 31, Casing of New Machinery (1) in all machinery driven by power and installed in any factory after the commencement of the Labour Laws (Amendment) Ordinance 1972 (a) every set screw, belt or key on any revolving shaft, spindle, wheel or pinion shall be so sunk, encased or otherwise effectively guarded as to prevent danger. |

WAL★MART

# ETHICAL STANDARDS



| | |
|---|---|
| | It was noted during factory tour that 8 out of 149 overlock machines were without needle/eye guard although tape cutter machines were provided with pulley guards. |
| | To conform to local law and Wal-Mart Standards for Suppliers, the factory should provide needle guards in overlock sewing machines which are without such protective device. |
| SECTION | HEALTH & SAFETY - PERSONAL PROTECTIVE EQUIPMENT (PPE) |
| NO RESPIRATORY PROTECTION AVAILABLE FOR OPERATIONS THAT EMIT DUSTS, MISTS, VAPORS OR FUMES | |
| Answer | YES |
| Pre Defined Comments | 1 Wal-Mart Standards: Factories shall provide adequate medical facilities and ensure that all production and manufacturing processes are carried out in conditions that have proper and adequate regard for health and safety of those involved. Wal-Mart will not do business with any supplier that provides an unhealthy or hazardous work environment or utilize mental or physical disciplinary practices. |
| Comments | Initial Audit (November 25th, 2006) |
| | No applicable local Law. |
| | It was noted during factory tour that overlock sewing machine operators, with lot of cut debris, were working without face mask. |
| | To conform to Wal-Mart Standards for Suppliers, the factory should provide face mask to overlock machine operators and train the employees in the use of PPE and its necessity. |
| | First Follow-up Audit (April 4th, 2007) |
| | The factory has not taken corrective action. |
| | No applicable local Law. |
| | It was noted during factory tour that overlock sewing machine operators, with lot of cut debris, were working without face mask. |
| | To conform to Wal-Mart Standards for Suppliers, the factory should provide face mask to overlock machine operators and train the employees in the use of PPE and its necessity. |
| SECTION | HEALTH & SAFETY - ACCIDENT/MEDICAL PROGRAM/FIRST AID |
| FIRST AID EQUIPMENT NOT AVAILABLE, INADEQUATE AND/OR INACCESSIBLE | |
| Answer | NO |
| Pre Defined Comments | |
| Comments | Initial Audit (November 25th, 2006) |
| | In accordance with Punjab Factories Rules 1978 Appendix I Rule [94] (1) factory to maintain first aid box containing items as described in Punjab Factories Rules 1978 Appendix I which include sterilized dressings, sterilized burn dressings and supply of adhesive plaster. It was noted during factory tour that first aid kits in production areas were without sterilized burn dressing and adhesive plaster, and first aid kits in stitching unit-5 and finishing unit-3 were found empty. |
| | To conform to local law and Wal-Mart Standards for Suppliers, the factory should keep first aid |

WAL·MART

# **ETHICAL STANDARDS**



|  | kits in production areas with all essential items as per Punjab Factories Rules 1978, Appendix I, which includes among others sterilized burn dressing and adhesive plaster. |
|---|---|
|  | First Follow-up Audit (April 4th, 2007) |
|  | It was noted during the follow-up audit that factory had maintained first aid boxes in production areas with all essential items as per Punjab Factories Rules 1978 Appendix-I. |
| SECTION | ENVIRONMENT - WASTEWATER TREATMENT/DISCHARGE |
| OTHER |  |
| Answer | YES |
| Pre Defined Comments |  |
|  | Initial Audit (November 25th, 2006) |
|  | In accordance with the Pakistan Environmental Protection Act 1997 section 11, prohibition of certain discharges or emission no person shall discharge or emit or allow the discharge or emission of any effluent or waste or air pollutant or noise in an amount concentration or level which is in excess of the National Environmental Quality Standards (NEQS). |
|  | It was noted that factory was discharging its effluent of dyeing and washing sections directly into general drain without any treatment. |
|  | To conform to local law and Wal-Mart Standards for Suppliers, the factory should comply with the requirements of the Environmental Protection Act and take measures to keep level of its effluent from dyeing and washing section within NEQS limits |
| Comments | First Follow-up Audit (April 4th, 2007) |
|  | The factory has not taken corrective action. |
|  | In accordance with the Pakistan Environmental Protection Act 1997 section 11, prohibition of certain discharges or emission no person shall discharge or emit or allow the discharge or emission of any effluent or waste or air pollutant or noise in an amount concentration or level which is in excess of the National Environmental Quality Standards (NEQS). |
|  | It was noted that factory was discharging its effluent of dyeing and washing sections directly into general drain without any treatment. |
|  | To conform to local law and Wal-Mart Standards for Suppliers, the factory should comply with the requirements of the Environmental Protection Act and take measures to keep level of its effluent from dyeing and washing section within NEQS limits. |

## **Audit Level Comments**

Comments

Overall Findings

In view of the findings raised, non-compliances were covered in the areas of Labor Practice - Benefits, Labor Practice - Wages, Labor Practice - Labor Hours, Labor Practice - Employment Practices, Health & Safety - Fire Safety Management , Health & Safety - Chemical Safety, Health & Safety - Equipment Safety, Health & Safety - Personal Protective Equipment

WAL+MART

# ETHICAL STANDARDS



(PPE), and Environment - Waste Water Treatment/Discharge. Details of the findings are listed in the following sections. For other area s, no violation was noted.

Best Practices Observed

Nil

Monitors Note

Nil

Recommended Corrective Action:

It is recommended that management adopt practices and controls which will ensure the following:

1. The factory should provide grou p insurance to its eligible employees.

2. The factory should provide Employees Old Age Benefits to all its eligible employees.

3. The factory should pay bonus to its eligible employees every year.

4. The factory should m aintain and provide accurate pa yment and time records of all its workers, consistent with the production records, for proper verification of wages and working hours.

5. The factory should provide employees one day off for every seven day period.

6. The factory should issue a copy of appointment letter with terms and conditions of service to employees.

7. The factory should ensure that access to all fire extinguishers is clear and unobstructed.

8. The factory should provide emergency set of stairs for laboratory and printing area on first floor.

9. The factory should ensure passages leading to emergency exit are kept clear during working hours.

10. The factory should post MSDS for chemical used in finishing area in local language.

11. The factory should provide eye/needle guards in overlock sewing machines which are without such protective device.

12. The factory should provide face mask to overlock sewing machine operators.

13. The factory should take effective measure to keep level of its effluent discharged from dyeing and w ashing department within NEQS limits.

Communicated Findings With

Mr. Umer Farooq Barlas - Deputy Manager HR & System

Receptivity of Supplier and Manufacturer

The factory management showed a positive attitude to this audit during the whole proc ess. Locked areas encountered during the audit were unlocked timely. At the end of the audit, all the findin gs were accepted by the factory management.

WAL★MART

# ETHICAL STANDARDS

